DETROIT FIRE & MARINE INSURANCE CO. *v.* WOOD.

| 118 | 31 |
|---|---|
| f118 | 46 |
| 118 | 31 |
| f121 | 75 |
| 118 | 31 |
| f124 | 278 |
| 118 | 31 |
| 137 | 4 67 |

1. TAX SALES—EFFECT OF CONFIRMATION—PURCHASE BY STATE—VALIDITY.

   A tax sale to the State, which has been reported to the court and confirmed, will not be set aside because the land was struck off to the State on the first day of the sale, in violation of a provision of section 70 of the tax law of 1893 (Act No. 206, Pub. Acts 1893), even if the further provision of said section, that no sale shall be set aside after confirmation, except where the taxes were paid or the property was exempt from taxation, is an unlawful restriction on the general exercise of equitable powers.

2. SAME—PROCEDURE—DATE OF SALE.

   *It seems* that the further provision of said section, that "the sale and all proceedings thereon shall be the same as if made on the first day fixed therefor," was designed to fix a time from which the redemption period should be computed, and does not authorize the dating of certificates and reports incident to the proceedings otherwise than in accordance with the facts.

3. SAME—REPORT TO AUDITOR GENERAL—TIME FOR MAKING.

   Under the provision of said section that, as soon as sales are confirmed, the county treasurer shall report the same to the auditor general, the treasurer is entitled to a reasonable time in which to make his report; and 10 days is not an unreasonable time to take for that purpose.

4. SAME—INEFFECTUAL EFFORT TO REDEEM—RIGHTS OF OWNER—STATE LANDS—PURCHASE PRICE.

   The owner of land bid in by the State for taxes, after the expiration of the period for redemption, paid to the county treasurer a sum supposed to be sufficient to redeem from the sale and to pay the taxes of a subsequent year. The auditor general, when the transaction was reported to him, rejected the redemption certificate, but did not refund the subsequent taxes, and afterwards sold the land to a third person on payment of the amount of the State's bid. *Held,* that he should have treated the attempt to redeem and to pay subsequent taxes as a single transaction, and wholly unavailing, and should have required the purchaser to pay the subsequent

taxes, as provided by section 84 of the tax law, failing which the deed issued to him was void, under *Hughes* v. *Jordan*, *ante*, 27.

Appeal from Ingham; Person, J.   Submitted February 2, 1898.   Decided July 18, 1898.

Petition by the Detroit Fire & Marine Insurance Company against Eugene B. Wood and the auditor general to set aside a tax deed, and to apply certain redemption money to the purchase of the land.   From a decree dismissing the petition, petitioner appeals.   Reversed.

*Moore & Goff* (*Edward Cahill*, of counsel), for petitioner.

*Charles W. Nichols* (*A. A. Ellis*, of counsel), for defendant Wood.

MONTGOMERY, J.   March 16, 1891, Frank S. Bagg and Eva Bagg mortgaged to the Detroit Fire & Marine Insurance Company the parcels of land described as situated in the city of Lansing, county of Ingham, and State of Michigan, and described as the "west ninety-nine (99) feet of lot number four (4), and the east eleven (11) feet of lot number five (5), of block number one hundred and four (104), of the city of Lansing."   Said mortgage was foreclosed, and the petitioner (mortgagee) became the owner of the premises, April 2, 1895.   Under date of March 27, 1895, H. J. Bond, treasurer of Ingham county, where the lands aforesaid are situated, wrote the following letter of information to W. A. Moore, who was president of the petitioner corporation, in response to an inquiry asking for a statement of the unpaid taxes for 1891 and 1892:

"County Treasurer, Ingham County, H. J. Bond, Treasurer.
                                    "MASON, MICH., March 27, 1895.
    "*Dear Sir:*   Inclosed please find statement of unpaid taxes as requested, interest computed for payment.   Subdivision of section:   West three-fifths lot 4, and east 11

feet of lots 5 and 6, block 104, tax for 1891 and 1892, $342.60. The above is the amount if paid this month or next.                  Yours respectfully,
                             "H. J. BOND, Co. Tr."

And again wrote Mr. Moore, under date of April 8, 1895:

"County Treasurer's Office, H. J. Bond, Treasurer.
                "MASON, MICH., April 8, 1895.
"W. A. MOORE,
      "Detroit, Mich.
    "*Dear Sir:* You have a complete statement from me of all uncollected taxes against the property in question, and after property is sold for taxes you cannot redeem the State and county without redeeming the whole tax. I send you statements of amount required to pay taxes for the several years, and can't see how can make it any plainer.             Yours respectfully,
                        "H. J. BOND, Co. Tr."

Thereupon Mr. Moore sent to Mr. Bond the sum of $311.50, which was the amount stated to be necessary to redeem the lands of the petitioner for taxes for 1891 and 1892, and received a letter from the county treasurer inclosing redemption receipts. The letter of the county treasurer is as follows:

"County Treasurer's Office, H. J. Bond, Treasurer.
                "MASON, MICH., April 10, 1895.
"W. A. MOORE,
      "Detroit, Mich.
    "*Dear Sir:* Inclosed please find receipts for redemption of '91 and '92 taxes. The city treasurer of Lansing has not made his returns to me yet for the 1894 taxes.
                "Yours respectfully,
                      "H. J. BOND, Co. Tr."

  The certificate of redemption for taxes of 1891 was as follows:

                "STATE BID.
  "County Treasurer's Redemption Certificate.— I hereby certify that the sums stated below are due for the redemption of the following described tracts of land, sold for taxes assessed in the county of Ingham for the year 1891: Sales book number 54. Description, west 99 feet lot 4,

and east 11 feet lot 5, of block 104, city of Lansing. State tax, $10.35; interest on State tax, $1.44; collection fee, $3.60; expense, $0.68; county tax, $15.55; interest on county tax, $2.18; other taxes, $64.20; interest on other taxes, $8.97; amount of bid, $106.97; total bids, $106.97; interest from December 3, 1894, to April 10, 1895, five months, at eight per cent. per annum, $3.53; aggregate, $110.50.

"Given under my hand, this 10th day of April, A. D. 1895.

"H. J. BOND,
"County Treasurer.

"County Treasurer's Office, Mason, Mich., April 10, 1895.
"$110.50. Received of William A. Moore, of Detroit, the sum of $110.50, in full of the above.

"H. J. BOND, Co. Tr.

"Countersigned: JAMES BLACKMORE,
"County Clerk."

The certificate of redemption for taxes of 1892 was as follows:

"STATE BID.

"No. 214. County Treasurer's Redemption Certificate. —I hereby certify that the sum stated below is due for the redemption of the following described tracts of land, sold for taxes assessed in the county of Ingham for the year 1892: Sales book No. 103. Description, W. 99 ft. lot 4, and E. 11 feet lot 5, block 104, city of Lansing. State tax, $6.67; interest on State tax, $0.94; collection fee, $6.57; expenses, $0.64; county tax, $9.63; interest on county tax, $1.35; other taxes, $148; interest on other taxes, $20.72; amount of bid, $194.52; total bids, $194.52; interest from December 3, 1894, to April 10, 1895, five months, at 8 per cent. per annum, $6.48; aggregate, $201.00.

"Given under my hand, this 10th day of April, A. D. 1895.

"H. J. BOND,
"County Treasurer.

"County Treasurer's Office, Mason, Mich., April 10, 1895.
"$201.00. Received of William A. Moore, of Detroit,

the sum of two hundred one dollars and —— cents, in full of the above.

                    "H. J. BOND,
                              "County Treasurer.
    "Countersigned:   JAMES BLACKMORE,
                              "County Clerk."

The county treasurer made an entry on the tax record for 1893 immediately after the description of the premises sold:

"William A. Moore, Detroit, Michigan, redeemed west 99 feet lot 4, and east 11 feet lot 5, block 104, $110.50, April 10, 1895."

A triplicate of the redemption certificates for taxes of 1891 and 1892 was sent to the auditor general by the county clerk about May 1, 1895. The following copy of a letter of the auditor general was offered in evidence:

"A. J. P.                                  June 20, 1895.
"INGHAM COUNTY TREASURER,
                    "Mason, Mich.
    "*Dear Sir:* We return herewith redemption certificate number 267. The description contained therein is not subject to redemption, but is held by the State, and is subject to sale as State tax land.
                    "Very respectfully,
                              "STANLEY W. TURNER,
                                   "Auditor General."

This letter of the auditor general was not received by the county treasurer. The first that the county treasurer knew that the auditor general would not accept the redemption certificate was near August 20, 1896 (cannot give exact date), when defendant Wood came to his office at Mason, Mich. He was surprised, and wrote W. A. Moore as soon as Wood went away. About August 20, 1896, defendant Wood went to the office of H. J. Bond, county treasurer, at Mason, and wanted to look at the tax record for the sales of 1893 (taxes of 1891). After looking at the entry, the county treasurer testified that he said:

"I have just made application to pay that at the auditor general's office; but there is no harm done yet. I see it is paid. here, and, when I go back, I will withdraw my money."

At that conversation defendant Wood told the county treasurer he had not received his deed. Defendant Wood testified that he said: "If I am obliged to, of course I will have to take my money back."

The certificate to the auditor general was dated December 4, 1893, which was the day for the sales to commence, being the first Monday in December.

On the 21st of August, 1896, Wood received a deed of the land from the auditor general, having applied for the same on August 11, 1896. This petition was filed to have the deed set aside, and to have the money remitted by Mr. Moore to the county treasurer applied towards a redemption or purchase of the land by the original owner, the insurance company. Three grounds are urged: *First*, it is claimed that the proceedings are irregular, in that it does not appear by. the report of sale that the lands were bid off to the State at a time when the county treasurer had the right to make sale to the State; *second*, that the report of sale was not filed within the time required by law; and, *third*, that the transaction of the attempted redemption should be treated as an application to purchase.

1. The report to the auditor general of the sale of the land is dated December 4, 1893, which was the first day of sale. Section 70 of the tax law (Act No. 206, Pub. Acts 1893) provides that,—

"If any parcel of land cannot be sold for taxes, interest, and charges, such parcel shall be passed over for the time being, and shall on the succeeding day, or before the close of the sale, be re-offered; and if on such second offer, or during such sale, the same cannot be sold for the amount aforesaid, the county treasurer shall bid off the same in the name of the State."

And it is urged that the date of the certificate as of the first day of the sale negatives any presumption that this

provision of the statute was complied with.   Counsel for
defendant call attention to a clause of the same section
providing that ''the sale and all proceedings thereon shall
be the same as if made on the first day fixed therefor,'' and
urge that this provision justifies dating all the sales as
of the first day.   There is force in the petitioner's conten-
tion, and it is doubtful if the provision last quoted was in-
tended to authorize a dating of the proceedings not accord-
ing with the facts.   The chief purpose of this provision
was, as we construe it, to fix a time from which the year
of redemption provided in section 74 will begin to run.
But, however this may be, the sale was reported to the
court, and confirmed.   Section 70 provides that no sale
shall be set aside after confirmation, except in cases where
the taxes were paid, or the property was exempt from
taxation.   Counsel for the petitioner raise the question
whether the general exercise of equity powers can be legit-
imately restricted by such a provision.   We need not
affirm or deny the legislative power in the premises.
We think the irregularity ought not to avail after confir-
mation, even if the power of the court is not restricted by
this provision.   The decree and sale under it are ordinarily
final, and, if the petitioner has in this case been subjected
to any wrong, it does not arise out of any irregularity
attending the sale.

2. Section 70 of the law provides as follows:   ''As soon
as sales are confirmed, the county treasurer shall make
full reports of the same to the auditor general.''   The
report was received at the auditor general's office January
10, 1894, some 10 days after the sale stood confirmed.   No
precise time is fixed for making this report.   A reasonable
time must of necessity be allowed for making this report,
and we think the time taken in the present case not un-
reasonable.

3. The main question discussed by counsel in this case
is not free from difficulty.   The payment made by Mr.
Moore to the county treasurer, and by him forwarded and
credited to the auditor general, was intended to be used to

accomplish two things: *First*, the redemption of the land from the sale for taxes of 1891; *second*, the payment of the taxes of 1892. A sum was remitted, sufficient, as was supposed, to accomplish this purpose. Both the county treasurer and Mr. Moore were mistaken as to the right to redeem from the 1893 sale. The whole transaction was reported to the auditor general, and he, without setting aside the attempt to redeem and pay the taxes of 1892, preferred to treat the payment to the county treasurer as insufficient to entitle the petitioner to a deed on the 1893 sale (as it probably was not). The result, therefore, was that not only was the intent and desire of the petitioner not accomplished, but, by treating the payments as separate transactions, the payment of the taxes of 1892 not only failed to relieve the lands of the petitioner as intended, but made it possible for Mr. Wood to become purchaser on payment of $132.27, instead of paying the whole tax due, as he would have been bound to do if the transaction between the petitioner and the county treasurer had been treated as an entirety, and the whole payment declined. The inequity of such a result is apparent. True, the county treasurer had not the right to accept redemption of the lands from the 1893 sale, and he did have the right to accept payment of the 1892 taxes; but Mr. Moore, as was well known, did not intend or attempt to pay this tax to discharge a burden resting on the lands of the State. The State, then, had the benefit of $201 of petitioner's money, which it was not entitled in equity to retain. Before Wood took his deed, he had notice of the facts sufficient to put him on inquiry; and not only is this true, but it is also true that it is only by reason that the State has made an application of the money of petitioner not intended by it that Mr. Wood was enabled to obtain a deed of the land for the small sum paid. We think it is only equitable to hold that the auditor general should have treated the effort of Mr. Moore as wholly unavailing, and that he should have required payment of the taxes of 1892 as a condition to

deeding the lands to Wood. Wood, having paid only a portion of the amount due, was not entitled to a deed. See *Hughes* v. *Jordan*, *ante*, 27.

The decree will be reversed, and the deed to Wood set aside, on payment of the amount paid by him, with interest.

The other Justices concurred.