JOHN TRIMBLE ET AL. *v.* NICHOLAS LONGWORTH ET AL.

1. Where, under the act of 1824, " directing the mode of proceeding in chancery," (Chase, 1279), the court directed the manner of giving notice to nonresident defendants, the order so made must be complied with substantially; and a finding by the court " that publication has been made according to law," is not conclusive upon bill of review.

2. A *femme covert*, party with others to a decree in chancery, may file a bill to review it at any time during coverture, and if she join with others who are barred by lapse of time, the bill may be dismissed as to them, and retained as to her, if it appear from the record that she would be entitled to such review upon her separate bill.

3. The disability which, under section 54 of the act of 1831, "directing the mode of proceeding in chancery" (Swan's St. 1841, p. 714), extends the time for filing a bill of review, is a *personal* privilege, and will not save the rights of persons barred by the statute, unless the rights of persons within the saving could not otherwise be secured to them.

4. Where a decree has been rendered against heirs, some of whom are under disability, to subject lands descended, to a contract of sale by the ancestor, and a bill of review is filed by all the heirs while such disability continues, but after the bar has attached to some of them, such disability will not inure to the benefit of those who would otherwise be barred.

BILL OF REVIEW.   Reserved in the district court of Hamilton county.

This bill of review was filed June 29, 1847, in the court of common pleas of Hamilton county, by certain heirs and descendants of heirs of Timothy Trimble, deceased, against Nicholas Longworth, the heirs of James King and of Nathaniel P. Hill, who were also heirs of Timothy Trimble, deceased, and the surviving husbands of Elizabeth Hunter and Sarah Comfort, also heirs of said Timothy Trimble. The bill seeks to review and reverse a decree against the heirs of said Timothy Trimble, rendered in said court of common pleas, in February, 1836, upon bill filed by Longworth, June 30, 1835, charging, in substance, that Thomas McNeal, Nathaniel P. Hill and James King, by Ralph Phillips, their attorney, on or about 7th January, 1813, by deed of that date, intended to convey to him in fee section 15, in township 3, and 2d fractional range, in the Miami purchase of 640 acres, except the forfeit of one sixth part, agreeable to the terms of settlement, as appears from the deed recorded in book K, page 453, of Hamilton county records, under a power of attorney, dated 16th September, 1812, and recorded in book F, No. 3, page 108, of said records, for full value paid by him, and that immediately thereafter he took possession, and had since, by himself and those under him, held the peaceable occupancy thereof, and never heard the title questioned until then recently, nor was he aware of any defects.   That said property had been conveyed by Silas Condict, jr., to said McNeal and Timothy Trimble, by deed of 8th May, 1806, recorded in book R, No. 2, page 245, of said records, and they went into possession and held until the death of said Trimble, in 1810, who died seized of the undivided half thereof, leaving his brothers and sisters, John Trimble, Alexander Trimble, Jane King, Elizabeth Hunter, Sarah Comfort, Isabella Hill, and Sarah Rog (Roy), sole heir of William Trimble, deceased, his heirs at law; and that they had, by power of attorney, empowered the said Nathaniel P. Hill and James King, who administered upon the estate

of the said Timothy Trimble, to sell said premises; and that, in pursuance of this power, they had authorized Ralph Phillips to sell the same, but by *mistake* they *omitted* to make the power of attorney to Phillips in the names of the said heirs of Timothy Trimble, deceased; and that through them the said heirs had long since received the purchase money so paid for said property. But that, notwithstanding said sale, the payment of said purchase money, its reception by said heirs, the deed and possession under it for more than twenty years, yet owing to said Hill and King as attorneys in fact for said heirs, by mistake in the power of attorney to said Phillips, not executing the same in the names of the said heirs, and owing to some technicality of which he was not advised, the said heirs, who are made defendants to said bill, and who were nonresidents of the State of Ohio, were not precluded at law from the possession and enjoyment of the undivided half of said premises, which was contrary to equity; wherefore he prayed that the defendants might be compelled to answer under oath, and his title quieted, and for general relief.

On 30th June, 1835, subpena issued to the sheriff of said county, returnable on 5th October next ensuing, and was returned "not found."

On 2d July, 1835, it was shown that the defendants were nonresidents of the State of Ohio, and the court ordered notice of the pendency, objects and prayer of said bill to be given to them by publication weekly, for six successive weeks, in some newspaper published and of general circulation in said county, and a copy of the paper containing the notice to be directed to the place of residence of the defendants, if known.

On 7th October, 1835, proof of publication was made, by producing in court a copy of the published notice, and filing therewith the affidavit of S. S. L'Hommedieu, one of the proprietors of the Cincinnati Gazette, a newspaper printed in Hamilton county, and in general circulation therein, that the notice had been published six consecutive weeks in said newspaper, next preceding the 14th day of August, 1835.

With said notice and the proof of its publication, the affidavit of A. N. Riddle was filed, and which reads as follows :

" State of Ohio, Hamilton County, ss.

" Adam N. Riddle, being duly .sworn, deposeth and 'saith that the Cincinnati Gazette, the same paper in which the above notice was inserted, was by said deponent transmitted by mail to Nathaniel P. Hill and others, defendants in said case, to Montgomery, Orange county, New York, on the 11th July, A. D. 1835 ; further, deponent saith not.

" Sworn to and subscribed before me, this 7th day of October, 1835.         } A. N. Riddle."
        " John Burgoyne, A. J.

On 7th October, 1835, is the following entry on the journal: " Due proof of the publication of the pendency of this cause being now filed, thereupon rule for answer in sixty days, and cause continued."

On 10th February, 1836, decree *nisi* was filed, and bill taken as confessed, under the rules of court.

On 24th February, 1836, the decree was entered upon the journal of the court. It finds the cause was heard " upon the bill, exhibits and testimony ;" and " the court find that all the defendants are nonresidents of the State of Ohio ; that notice has been given them, by publication in due form of law, prior to the October term of this court, 1835, and all the said defendants having failed to answer, or in any way respond to the bill according to law and the rules of this court, it is ordered that the bill be taken as confessed." " And the court, having examined the proof in the cause, are satisfied, from the evidence, that the complainant has the right in equity to the land in question, and that he ought to be quieted in the title thereto." . It was ordered, adjudged and decreed that the defendants, naming them, within ten days from the day of entering said decree, execute, acknowl- edge and deliver to Mr. Longworth and his heirs, in fee simple, a deed of quit-claim of all their right, title and interest as heirs at law of the said Timothy Trimble to said

land, describing it. It finds said land belonged to Timothy Trimble, who died without issue, leaving the defendants his heirs at law, and that they had sold the same to the complainant, received the purchase money, and put him in possession; and thereupon the court further decreed a perpetual injunction against said defendants, with costs, etc.

The said bill of review avers that Nathaniel H. Fowler and Isabella Hill were minors on February 24, 1836 (not true as to Nathaniel H. Fowler, who appears to have been born in 1813), when decree was entered, but does not say they so continued until within five years before said bill of review was filed on 29th June, 1847. It claims that the proceedings and decree should be set aside, because:

1. It decreed the land to Longworth without pay.

2. The bill shows no case for relief in equity.

3. There was no mistake, as alleged in said bill.

4. The decree gave to Longworth a title he never purchased.

5. No such purchase was made under said power of attorney to said Hill and King.

6. The charge in the bill that the purchase money was paid, is not sustained.

7. It was taken as confessed, when defendants were ignorant of it.

8. The order as to notice was not complied with. It was not sent to defendants, nor did it state the prayer of the bill correctly.

9. Isabella Hill and Nathaniel Fowler, were minors.

10. Mrs. Hunter and Mrs. Comfort were married.

11. The decree was surreptitiously taken without being set down for hearing, under rule 59.

12. The deed and power of attorney not made exhibits to bill.

13. The decree was entered without proof.

14. No proof or exhibits shown to the court.

On 10th August, 1847, the answer of Mr. Longworth was filed. It denies the fraud charged, sets up the original de-

cree, denies the errors charged, and insists on the lapse of time, etc.

On October 29, 1847, replication was filed.

The testimony establishes the heirship of the complainants in review, and that they never received the paper containing the printed notice mentioned in the affidavit of Riddle ; and that they did not, until long after the original decree, and shortly before they filed their bill of review, know that they had any property in Ohio ; and that Isabella Young, one of the· complainants in review, died January 4, 1848, leaving John S. Young, Elizabeth Young, Adeline F. Young, Isabella B. Young, Mary Young, Jane C. Young, Sarah R. Young and Andrew Young, her heirs at law.

*J. L. Miller* and *Parker & Parker*, for complainants in review.

*Worthington & Matthews,* for Longworth.

PECK, J.—Several grounds for the reversal of the decree in this case have been suggested, but we deem it necessary to notice those only which relate to an alleged want of jurisdiction in the court pronouncing it, over the persons of the defendants ; and the rendition of such decree against minors, without the appointment of, and an answer by, a guardian *ad litem* in their behalf.

1. As to jurisdiction over the persons of defendants.

The original bill was filed in the Hamilton common pleas, June 30, 1835, against the heirs of Timothy Trimble, deceased, one Isabella Hill, being then a minor, though not so described in the bill, and five others, being under coverture, to correct an alleged mistake in, and compel specific execution of, a contract for the sale of real estate, situate in that county, and descended to them and their co-defendants. The heirs being all nonresidents of the state, were not subject to the process of our courts, and the statute then in force, the 12th section of the " act directing the mode of proceeding in chancery," passed January 22, 1824 (2 Chase, 1279),

provided that, in such cases, suit might be prosecuted "in any county where the land lies, and the court *should direct the manner of giving notice to the absent defendants.*"

The bill sets forth the names and residence of all the heirs, some residing in the State of Pennsylvania, others in New Jersey, and others still in New York; and the court thereupon "ordered, that notice of the pendency, objects and prayer of said bill, should be given to them by publication weekly in some newspaper published, and of general circulation in said county, *and* a copy of the paper containing the notice, to be directed to the *place of residence of the defendants, if known.*"

The only proof on file, as to a compliance with this order of the court, is first, an affidavit by one of the proprietors of the Cincinnati Gazette, of the due publication, in that paper, of the notice required by the first branch of said order; and secondly, the following affidavit of A. N. Riddle, Esq., solicitor of complainant:

"STATE OF OHIO, HAMILTON COUNTY, ss.

"Adam N. Riddle, being duly sworn, deposeth and saith, that the Cincinnati Gazette, the same paper in which the above notice was inserted, was, by said deponent, transmitted by mail to Nathaniel P. Hill and others, defendants in said case, to Montgomery, Orange county, New York, on the 11th July, A.D. 1835; further, deponant saith not.

A. N. RIDDLE."

"Sworn to, and subscribed, before me, this 7th day of October, 1835.

JOHN BURGOYNE, A. J."

If this affidavit discloses all that was done toward notifying the defendants, under the last clause of said order, it was clearly insufficient as to all of them except Nathaniel P. Hill, who is charged in the bill with having, under claim of authority from his co-heirs, sold his and their inheritance, and received the consideration therefor, but had, by mistake, failed to convey their interests therein. This affidavit proves merely

that a single copy of the paper containing the notice was for-
warded to Montgomery, Orange county, N. Y., directed to
"Nathaniel P. Hill and others," and was not accompanied by
any proof that the precise residence of the other heirs in the
states of Pennsylvania, New Jersey and New York was un-
known.   The liability asserted—their obligation to convey—
was, as will be seen hereafter, *severable.*   Performance might
be decreed as to one or more, and refused as to others.   A
notice, therefore, sent only to one who had confessedly granted
away all his interest in the land, and was charged with having
sold the interest of others, and received the money, is not,
we apprehend, a substantial compliance with the order of the
court, unless it appeared that the *residence of the others was
unknown.*   He might communicate the information to them,
it is true ; *and he might also be interested to suppress it.*

It is an elementary principle that no man's rights should
be adjudged until he has had his day in court, and an oppor-
tunity to be heard.   The statute, however, in cases like the
one at bar, from a supposed necessity, has sanctioned an ad-
judication of one's rights, without actual notice to him that
those rights are in process of litigation ; but in all such cases,
it must be shown that the statutory substitute for personal
service, has been substantially complied with.   This does not
appear to have been done in the present instance.   The pub-
lication and the sending copies to the heirs *unitedly,* formed
the process by which they were to be brought into court, and
are a part of the complete record.   It is a case in which the
decree was directly impeached, and not one in which its val-
idity is drawn in question collaterally.   Jurisdiction must,
therefore, appear, and is not to be presumed, from its ex-
ercise.

But, it is said that the sufficiency of the service is *res ad-
iudicata,* and can not now be questioned by the complainants
in review, the court below having recited, in its decree, that
the cause was heard upon bill, exhibits and testimony, and
" *that notice had been given by publication in due form of
law.*"   Aside from the fact, that such form is usually adopted
by the solicitor without consulting the court, it is, perhaps,

sufficient to say that such *ex parte* finding, where the record otherwise shows neither appearance nor service of process, can not estop a party from denying the fact of jurisdiction, in a bill of review seeking to set the decree aside for such cause. If this were not so, it would always be within the power of the court, or its amanuensis, to exclude all inquiry into its jurisdiction, by expressly finding such jurisdiction to exist, and then presenting such finding as an estoppel to further inquiry.

The distinction between cases where the validity of the record of a court of general jurisdiction is drawn in question *collaterally*, and those in which such record is *directly* im peached by writ of error or bill of review, is broad and well defined. In the one case, jurisdiction is presumed *prima facie*, unless the record disproves it, while in the other, if it is denied, its existence must be proved by the record itself. The validity of the record now before us was considered in the case of *Lessee of Fowler* v. *Whiteman* (2 Ohio St. Rep. 270), and it was held by a majority of the court that the finding of the court, " that publication had been made according to law," was *conclusive* in a collateral action, but it is distinctly admitted, on page 286, that such finding might be impeached upon review or rehearing.

The publication in the paper, and sending copies to the defendants, was the process for bringing the defendants into court, and forms part of the record. We are not at liberty, in this proceeding, to presume, in favor of the jurisdiction and finding of the court, that there was also proof that copies were sent to the other defendants. The affidavit professes to embrace all within its terms, " to Nath. J. P. Hill and others, defendants in said case," and is, therefore, analogous to the case of *Moore* v. *Starks* (2 Ohio St. Rep. 369), in which a subpena for minor heirs had been returned "not subpenaed, and in which the court refused to presume, *even in a collateral action*," that another subpena had been issued and served, but held that it appeared *affirmatively*, from the record, that the court had not obtained jurisdiction over the minor heirs. If this decision is correct, where the record is collat-

erally assailed, the rule is clearly applicable where the record is directly attacked by bill of review.

Again, the testimony which abundantly proves that no copies of the " Gazette," containing the notice, were received by *any* of the complainants in review, is strong negative testimony that no such copies were sent. Such testimony would not, it is true, outweigh positive testimony that such copies were sent, if the affidavit was fairly susceptible of such interpretation; but, in the absence of any such positive proof, the negative testimony is of much significance, and, aided by the silence of the record, would be satisfactory evidence that no other proof was made.

We are of the opinion that the publication and proof of notice, disclosed by the record, were not such as conferred upon the court jurisdiction over the persons of the defendants. But their right to require a reversal of the decree, even for such cause, depends upon the further question whether the bill of review was filed within the time allowed by law. The statute, on principles of public policy, limits the period within which such bill may be filed, and if that period is suffered to elapse without action by the party aggrieved, the decree, however erroneous, must stand.

Section 54 of the act of 1831, " directing the mode of proceeding in chancery " (Swan's St. of 1841, p. 714), enacts that " any person who was a party to a decree of a court of chancery, his heirs, executors or administrators, may file a petition for a review of the proceedings in which such former decree was rendered, at any time within *five years* next after rendering such decree, *unless the person entitled to such petition for review was an infant, femme covert, non compos mentis, or imprisoned, then within five years after the removal of such disability."*

The original bill was filed June 30, 1835, and final decree rendered thereon February 24, 1836, and the bill of review was not filed until June 29, 1847, more than eleven years after the rendition of the decree it seeks to vacate. It is manifest, therefore, unless some of the claimants in review were within the savings of the statute above quoted, that the

bill must be dismissed as to all. It is claimed, however, that some of them were at the time of said final decree, under the disability of infancy and others under that of coverture. The testimony shows, conclusively, that only one of them, Isabella Hill, was a minor when the original bill was filed, and that she attained full age April 3, 1838. Her right, therefore, to file a bill of review ceased April 3, 1843, that day being five years after disability removed— and more than four years before the bill of review was, in fact, filed. It also appears that seven of the defendants in said original bill, Sarah Comfort, Isabella Scott, Elizabeth Hunter, Isabella Young, Elizabeth Murdock, Mary Chandler and Catharine Sampson, were all under the disability of coverture when the decree was rendered. Mrs. Comfort, Mrs. Scott and Mrs. Hunter died shortly thereafter, leaving issue, the first two in 1837, and the last in 1838. Their respective rights thereupon descended to their heirs, freed from such disability, and the heirs, at the expiration of five years from the death of their mothers, were barred from filing a bill of review, which period elapsed long before the bill was filed.

Isabella Young was one of the complainants in the bill of review, but died in 1848, leaving issue, and it is claimed in argument that her heirs were made parties to this proceeding, but we do not discover any evidence of such revivor in the transcript or files in the cause. If made parties their rights are saved, and as to the interest of Mrs. Young, the case will be continued to ascertain how this may be.

Mrs. Murdock, Mrs. Chandler and Mrs. Sampson, so far as the papers and proofs show, are still under coverture, and entitled to a review of the decree. They each claim one equal forty-ninth part of the premises in controversy. It is urged however that, under the provisions of section 54, above quoted, parties to a decree laboring under disability, can not, by themselves or others, file a bill to review it while such disability continues. We think such construction far too narrow and illiberal. The statute is *remedial,* and its object was to *save* and not to *suspend* the rights of persons under disability —to *protect* and not to *incapacitate.* The phrase "any per-

son " in the first clause, includes persons under disability as well as others, and under it the guardian, husband or *pro-chein ami* may prosecute such bill during disability, but if none such interpose, the person disabled or, as the case may be, his representative, may prosecute such bill within five years after disability removed. The construction insisted on, would place those the statute designed to protect, in a worse condition than persons under no disability. Such *suspension of the right* might deprive them entirely of the benefits arising from a reversal of the decree.

This brings us to consider the effect to be given to the disability of these complainants, who joined with others, not under disability, in filing the bill of review, more than five years after rendition of the decree it seeks to vacate and set aside.

The complainants insist, that the savings of the statute *must inure to the benefit of all,* while the respondents claim that the bill must nevertheless be *dismissed as to all.*

The question depends upon the character of their interest, in the subject matter of the decree, whether *joint* or *severable.* If merely *joint,* the disability of one must, from necessity, inure to the benefit of all, because otherwise the protection of the statute could not be secured to the one under disability ; but if the interests are *severable,* the protection of the statute must be limited to persons within its provisions, and we see no real difficulty in such case, in dismissing the bill as to those barred, and decreeing in favor of those protected by the statute. At *law,* some difficulty might arise, but none, we think, in chancery, where the costs are subject to the discretion of the court, and the decree may be so molded as to do justice to all.

There are some apparent discrepancies in the cases decided in this state, but when carefully considered, they will be found not to conflict with the principles we have stated.

The case of *Wilkins and others* v. *Phillips* (3 Ohio Rep. 49), was a writ of error (which was then permitted in practice) to a decree in chancery, in which it was held that the disability of one heir, inured to the benefit of his co-heirs.

The subject of the suit against the heirs, does not appear in the statement of the case, nor in the opinion of the court. It may be, that their interests were necessarily joint and inseparable, or it may have been so held in analogy to ordinary writs of error and the supposed inflexibility of legal proceedings.

*Meese and Wife* v. *Keefe et al.* (10 Ohio Rep. 362), was a bill in chancery filed by heirs, to contest the validity of a pretended will of their ancestor, and in which it was held, that the disability of one, necessarily saved the rights of the other heirs. The rights of the heirs in this case, were inseparably connected. It could not be *the will* as to one, and *no will* as to the others. And in this case the court say, that " where common interests can be severed, the protection of the statute extends no further than to him within its provisions ; but where no such severance can be made, and the protection of the statute can not be secured, without covering other interests, the benefit of the statute claimed by one avails all."

In *Massie's Heirs* v. *Matthews' ex'r, etc.* (12 Ohio Rep. 351), which was a bill of review, filed by the heirs of Massie to reverse a decree requiring them to execute an agreement of their ancestor, by the conveyance of lands descended to them, the court fully recognize the rule stated in 10 Ohio Rep. *supra ;* but hold that the disability of one heir inured to the benefit of his co-heirs in that case, because the covenant of their ancestor to convey was, as to them, *entire* and not *severable.* Had the agreement been one of the heirs themselves, we think the court would have held it severable.

In *Kay et al.* v. *Watson* (17 Ohio Rep. 27), which was also a bill of review filed by heirs to reverse a decree twelve years after its rendition, for the conveyance of lands descended, on fulfillment of a contract by their ancestor, one of the heirs being under the disability of coverture, it was held, in opposition to the case in 12 Ohio *supra,* that the interest of the heirs was *severable,* and that she should have filed her separate bill of review. The court say, " the subject matter in controversy is capable of division, and a bill of review for her undivided part of the land, would secure to her all her

title." The syllabus, indeed, is, that if in such case she join with others not under disability, the *bill must be dismissed as to all.* There is no such statement in the opinion, but on the contrary, the court examine into her equities and finding that she had *no claim to the land in controversy,* for that cause dismissed the bill as to her.

In *Sturgess* v. *Longworth* (1 Ohio St. Rep. 562), which was also a bill of review, the same general doctrine is asserted as the settled law of Ohio. The court holding, in that case, that the rights of defendants in the original action were *joint,* and *so blended* that they could not be *severed,* and that, of necessity, the saving as to one, must inure to the benefit of all.

Upon the same principle, it was held in *Lessee of Moore* v. *Armstrong* (10 Ohio Rep. 11), and in *Bronson* v. *Adams* (Ib. 137), that the disability of one *coparcener,* or tenant in common, under the general statute of limitations, would not inure to the benefit of his coparcener or cotenant, their rights and interests being severable and distinct.

It is clear from these authorities, that the coverture of Mrs. Murdock, Mrs. Chandler and Mrs. Sampson does not prevent them from filing a bill of review during its continuance, and that such coverture will not save the rights of their coparceners. These females are heirs of Alexander Trimble, one of the right heirs of Timothy, who died in 1828, before the original bill was filed, but after the alleged sale to Longworth. The original bill, as to them, was an attempt to enforce a contract of sale by their immediate ancestor. According to the case in 12 Ohio Rep. 351, the saving as to them inured to the benefit of all the heirs of Alexander Trimble; but according to the rule laid down in 17 Ohio Rep. 2., which we regard as the true rule, it only saves their individual rights. It is a beneficial statute, designed to compel a speedy termination to litigation, and the saving is a *personal* privilege. To extend the benefits of that saving to others, when not required to protect the rights of those within its purview, is a repeal, *pro tanto,* of the statute itself.

The heirs of Alexander Trimble are each entitled to distinct, though undivided portions of the estate descended.

They are coparceners, and, as such, have severable interests, so that the saving of one does not inure to the others—10 Ohio Rep. 11, 135. As was said in *Kay* v. *Watson, supra,* " the subject of controversy is capable of division, and a bill for her undivided part of the land would secure to her all her title."

There is not, then, any necessity for relieving the other heirs from the consequences of their own *laches;* and the integrity of the statute is thus maintained.

We are not willing to dismiss the bill of review because others are united with these *femmes covert,* as complainants, whose rights are not saved. Regularly, all parties to a decree should be made parties, either plaintiffs or defendants, in proceedings to review it; and it matters but little, in chancery, in which capacity they are brought into court. The real question is, whether Mrs. Murdock, Mrs. Chandler and Mrs. Sampson, upon the facts disclosed by the record, could have maintained their separate bill to review the decree; and this is only doing what was done in *Kay* v. *Watson, supra,* which, in many of its features, was like the case at bar Looking at the record for this purpose, we find that none of them were, in fact, before the court at or before the hearing, nor had they been made parties to the proceeding in any mode authorized by law. It was, therefore, an adjudication of their rights without having given them an opportunity to be heard; and for this cause, if for no other, the decree should be set aside, and reversed.

The fact that Isabella Hill, who is the only defendant in the original bill, laboring under disability of infancy when the decree was rendered, omitted to file her bill of review within the period of five years next after disability removed, relieves us from the necessity of considering the irregularity of entering a decree against her, without the appointment of a guardian *ad litem,* and an answer by him. Her right to review, for *any cause,* is barred by the statute.

Counsel for complainants have also argued, at great length, the question of fraud in procuring the decree, apparent, as they urge, upon the record; but if this were so, it is sufficient to say, that " fraud practiced in procuring a decree, does

not lay the foundation for a *bill of review.* In such case the party injured must resort to an *original bill* to impeach and avoid the decree for *fraud."* *Cooch et al.* v. *Cooch,* 18 Ohio Rep. 148.

Holding as we do, that the interests of the complainants in review are severable, and that their several rights in the subject matter of said decree may be adjusted, as if they had filed separate bills in that behalf, we are satisfied that the decree must be vacated and set aside, as to the complainants, Elizabeth Murdock, Mary Chandler and Catharine Sampson, and their respective husbands, said Elizabeth, Mary and Catharine, each owning one forty-ninth part of the premises in controversy, and that the cause be certified as to them to the district court, for further proceedings. And in view of the proof before us, that Isabella Young, one of the complainants in review, claiming a like interest, or one forty-ninth part of the lands in dispute, departed this life, January 4, 1848, leaving lineal descendants, and of the dispute between counsel, as to whether the suit has been revived or not in the names of her said heirs, it is also ordered, that said bill of review be also certified to said district court as to her, and those claiming under her, for further proceedings, and that said bill of review be dismissed as to each and all the other complainants.

SUTLIFF, C. J., and SCOTT and BRINKERHOFF, JJ., concurred. GHOLSON, J., did not sit, having, formerly, been of counsel.