### HALL *v.* MANN.

TAXATION—PURCHASE OF STATE LANDS—NONPAYMENT OF CURRENT TAXES.

> An applicant to purchase state tax land, who deposits with the auditor general a sum sufficient to pay all taxes constituting a lien thereon, but without advising him of an unpaid current tax, is not entitled to a deed of the land as against a subsequent applicant who pays the current tax, and tenders to the auditor an amount sufficient to cover all demands against the land.

Appeal from Muskegon; Russell, J. Submitted October 24, 1899. Decided November 14, 1899.

Petition by Alice A. Hall against M. E. Mann and George F. Brown to set aside a tax deed. From a decree for petitioner, defendants appeal. Affirmed.

*Brown & Adams*, for petitioner.

*Black & Brown*, for defendants.

HOOKER, J. The premises in controversy in this proceeding belonged to Alice A. Hall, and were bid in for the State for taxes in 1893. On February 17, 1897, the defendants filed the following application with the auditor general:

"LANSING, MICH., Feb. 17, 1897.
"HON. AUDITOR GENERAL.
"*Sir:* Application is hereby made to purchase on the following list of lands of M. E. Mann and Geo. F. Brown, of Flint, Mich. Amount handed you herewith, $5.00.
[Signed] "M. E. MANN and GEORGE F. BROWN,
"Flint, Mich."

It contained a description of the land in dispute, and no other, and five dollars accompanied it. On March 23d the auditor general received the following communication, inclosing $33.63:

"LANSING, MICH., March 23, 1897.
"HON. AUDITOR GENERAL.
"*Sir:* Referring to serial No. 7,260, we herewith inclose $33.63 to complete purchase.
[Signed] "M. E. MANN,
"Clio."

On May 19, 1897, M. C. Kelley wrote a letter to the auditor general on behalf of Mrs. Hall, saying that he had discovered that the property was sold for the taxes of 1896, and that it was a mistake, because he had paid the taxes, except drain taxes, which had been set aside by the court. He inclosed tax receipt, and asked that the sale be canceled. He also stated that he found that the N. E. ¼ of S. W. ¼ (being the N. ½ of the premises in dispute) had been sold for 1893 for $7.38, which he supposed was paid, and he applied for a deed for Alice A. Hall, with the promise to send amount necessary to be paid when informed of it. Evidently the auditor informed him that there was an earlier application, as Kelley's next letter, written on May 26, 1897, asked for the name of such applicant, and stated that Mrs. Hall was the owner of the land, and asked if there was any way in which she could save her title. On July 6, 1897, the auditor general issued a deed to the defendants, and with it the auditor general returned $15.73. Mrs. Hall had paid these taxes for 1896 on May 25, 1897, to the county treasurer, the amount being $13.09. She subsequently made application to purchase the title, and for a deed of the land, offer-

ing to pay all taxes and charges, interest and costs, re- quired, and accompanied the application by a tender of a sufficient sum to cover the demands against the land, and asked that a certificate of error be given her. This was refused, and a petition was filed in the circuit court ask- ing that the auditor general be required to issue a certifi- cate of error, and for other relief. See *Hall* v. *Mann*, 118 Mich. 201. After the filing of said petition, and on December 17, 1898, the defendants returned to the auditor general the $15 which they had received from him, and applied for a receipt for the taxes of 1896. The circuit court declared defendants' deed null and void, and directed the auditor general to issue a certificate of error annulling the deed, and, upon receiving the money tendered, to issue a deed to the petitioner, Mrs. Hall.

It is agreed that the only question in the case is whether the defendants were entitled to a deed under their appli- cation and deposits of February 17 and March 23, 1897. Their counsel rely upon the cases of *Eldridge* v. *Rich- mond*, 120 Mich. 586, and *Wilkin* v. *Keith*, 121 Mich. 66. The former holds that a proper application and deposit entitle the applicant to a deed as upon a complete purchase, and that the auditor general has no right to refuse it. The latter case is said to show that the defend- ants were purchasers. A reference to the various cases including and following *Hughes* v. *Jordan*, 118 Mich. 27, will show much controversy over the question there decided. It has been insisted that the rule worked hard- ship upon persons who desired to purchase lands from the State, who, if they paid all claimed by the auditor general, might find later that some other person had anticipated them in the payment of current taxes, thus invalidating their purchase; or, if they took time to pay the tax to the local authorities, they might be too late to buy the land from the State. It is said that we held in *Wilkin* v. *Keith* that it was competent to pay all to the auditor general, and this is true. The position of the defendants in this case is that, by sending with their application a

sum large enough to cover all taxes that might be a lien, they became purchasers, notwithstanding the fact that neither the auditor general nor themselves knew that there was a current tax unpaid, and notwithstanding the fact that the auditor general returned, and they accepted, a portion of their money, after it became evident that there was no tax returned. It is probable that neither party considered the current tax, the case of *Hughes* v. *Jordan* not having been decided at the time of these occurrences. But. it makes no difference. The case of *Wilkin* v. *Keith* is not authority justifying the practice of depositing a gross sum large enough to surely cover all taxes, and leaving the auditor general to ascertain whether there is an unreturned tax outstanding. There is no exigency that requires it. *Wilkin* v. *Keith* clearly shows what a would-be purchaser may do if he wishes to be safe, and, if he cannot take time to take the necessary steps, he must take the chances of losing his purchase. *Wilkin* v. *Keith* holds that a purchaser should know whether or not he wants to pay a current tax not returned, and, if so, should inform the auditor general of the' fact and the amount, as the following brief quotation shows:

"A man desiring to purchase state tax lands can ascertain the amount of current taxes due before making his application to purchase, and either by producing a statement that shall be satisfactory evidence to the auditor general of the amount of such taxes, or by conveying to the auditor general information that such tax remains unpaid if he cannot procure an official statement that the auditor will recognize, and paying him the amount in addition to the other amounts necessary, as shown by the auditor's records, can secure his legal rights as a would-be purchaser, without being subjected to any risks whatever."

The decree of the circuit court is affirmed, with costs.

The other Justices concurred.