DETROIT TRUST CO. *v.* LIEBERWITZ.

1. TAXATION—SUBSEQUENT TAX LIENS—PRIORITY.
   Ordinarily the most recent tax lien is the senior and prior over older tax liens.

2. MUNICIPAL CORPORATIONS—TAX SALES—DETROIT CHARTER—PRE-
VIOUS CITY BIDS.

Under Detroit charter purchasers at tax sales must pay not only
the amount of the tax plus charges but all prior city bids
(Detroit Charter 1918, title 6, chap. 4, § 11).

3. SAME—CERTIFICATE OF SALE—TAX TITLE.

Certificate of sale *held*, improperly issued to purchaser at tax
sale, who did not pay previous city bid (Detroit Charter 1918,
title 6, chap. 4, § 11).

4. SAME—DEFECTIVE TITLE.

Failure of purchaser at tax sale to pay previous city bid in
accordance with charter requirement rendered title subject to
attack even after later payment of city bid by owner not-
withstanding provision of charter barring disallowance of sale
finally confirmed by council, such provision being inapplicable
to sales made in contravention of law (Detroit Charter 1918,
title 6, chap. 4, §§ 11, 14).

5. EQUITY—DOING EQUITY.

One who seeks the aid of an equity court must be prepared to
do equity.

6. TAXATION—DEFECTIVE TAX TITLE—EQUITY—INTEREST.

Valid tax constituting an enforceable lien against premises may
be attacked by owner of premises because of serious defect in
the tax sale provided he acts promptly and does equity, *e. g.*,
pay purchaser at sale amount latter had to pay plus five per
cent. interest from time of bid to time of reimbursement.

Appeal from Wayne; Hunt (Ormond F.), J. Sub-
mitted January 16, 1936. (Docket No. 98, Calendar
No. 38,777.) Decided April 7, 1936.

Bill by Detroit Trust Company, a Michigan cor-
poration, as trustee, against Rae Lieberwitz and
others to enjoin issuance of a tax deed. Bill dis-
missed. Plaintiff appeals. Reversed conditionally.

*Stevenson, Butzel, Eaman & Long (A. Hilliard
Williams,* of counsel), for plaintiff.

*Shapero & Shapero,* for defendant Lieberwitz.

*Raymond J. Kelly* and *John H. Witherspoon,* for defendant City of Detroit and its controller.

BUTZEL, J.   The Detroit Trust Company as successor trustee was granted a decree of foreclosure on May 13, 1932, of a mortgage on property improved with a theater building in Detroit.   The mortgage secured a bond issue on which $184,278.05 with interest at 6 per cent. from May 25, 1931, was due at the time the decree was entered.   Owing to market conditions, the foreclosure sale has not yet been held.

The taxes assessed against the property by the city of Detroit for the year 1928 had not been paid and on a tax sale the property was bid in by the city for $5,098.10, the amount of the 1928 taxes plus charges.   At a subsequent tax sale for the unpaid 1929 city taxes, Manuel Faust bid $4,898.91, the amount of the 1929 city taxes and charges, and the sale was confirmed by the common council of Detroit on July 22, 1930.   At the time of the sale, however, Faust failed to bid or pay the additional sum of $5,098.10, the city's bid for the 1928 taxes, which remained unpaid long after Faust received on his purchase a certificate stating that unless the owner redeemed in time there would be conveyed to him a 99-year leasehold of the property in consideration of his purchase at the sale for the 1929 city taxes. On May 1, 1931, the Detroit Trust Company paid the city $6,075.24, the total amount due with interest for the 1928 taxes and the city executed a receipt showing payment.   The trust company had been in possession of the property in accordance with the terms of the mortgage for some time.   It used all the income to pay insurance, taxes and maintenance costs, there being no reserve.   Its payment of the

1928 city taxes was without any promises or inducement from Faust. Later, however, upon assurances given from time to time by Faust and his representatives that they would cooperate with the trust company and afford it an opportunity to .work out the tax situation, the trust company paid $2,082.07 as the first and second instalments, under the deferred payment plan, of subsequent city taxes assessed against the property. On May 23, 1934, Faust served a notice upon the trust company and other interested parties stating that unless the sum of $9,787.82, being double the amount of Faust's bid for the 1929 taxes, was paid within six months after the service of the notice, Faust would apply to the controller of the city of Detroit for a deed of the property. On July 2, 1934, Faust quitclaimed his rights in the property and conveyed his interest in the tax sale certificate to Rae Lieberwitz. Before the expiration of the six months, the trust company brought the instant suit and in an amended bill, naming Lieberwitz, the city of Detroit and its controller as defendants, it sought to enjoin the issuing of a deed under the 1929 sale, claiming that the sale was illegal, not in accordance with the provisions of the charter or the equitable rights of plaintiff. Plaintiff has appealed from a decree dismissing the bill.

Section 11 of chapter 4, title 6, of the Detroit city charter, prior to the amendment of 1933, provided as follows:

"If the owner * * * do not pay such * * * tax, * * * then the city treasurer shall * * * cause such real estate to be sold at public auction, for the lowest term of years at which any person shall offer to take the same, in consideration of advancing such * * * tax, with * * * charges and direct the execution

of a proper certificate of such sale to the purchaser thereof: Provided, that if any lot or parcel of land so offered for sale shall have been previously sold for taxes assessed thereon in previous years and the same shall have been bid in at such previous sale or sales by the controller for, and is still held by, the city the purchaser shall be required to pay to the city treasurer the amount of all previous bids.''

Plaintiff contends that because Faust, as purchaser at the tax sale, did not pay the city bid for the 1928 taxes, the sale for the 1929 taxes was void and gave the purchaser no rights. Unquestionably the charter was framed so as to necessitate the payment of previous bids. Possibly the framers of the charter feared that otherwise the rule of inverse priority of tax liens which makes the most recent tax lien the senior and prior over older tax liens might be applied so that the sale by the city for later taxes would cut off its rights under a bid for previous ones. See *Auditor General* v. *Clifford,* 143 Mich. 626, 630; 3 Cooley, Taxation (4th Ed.), §§ 1242, 1492.

A somewhat analogous situation was presented in *Hughes* v. *Jordan,* 118 Mich. 27, in which what is now known as 1 Comp. Laws 1929, § 3477, was discussed. This section then provided as follows:

''Any person may purchase any State tax lands by paying therefor the amount for which the same was bid off to the State * * * together with the other taxes remaining a lien on such lands at the time of the purchase so made.''

In holding that the sale of property for the unpaid taxes of 1893 was subject to attack because the purchaser had not paid the 1896 State and county

taxes which had become a lien on the property at the time of the tax sale, the court said:

"The auditor general has no authority, under section 84 (1 Comp. Laws 1929, § 3477), to sell and deed State lands, except upon receiving the price required by law, and this the purchaser is bound to know. The taxes become a lien upon the land early in December,—a fact that is known to the auditor general, and of which the purchaser must take notice. Before the auditor general is authorized to part with the title of the State, he must be paid all taxes which remain a lien upon the land. After the time that taxes have become a lien, both purchaser and auditor general are aware that taxes have become due and payable which have not been returned. The purchaser can procure and the auditor general may require evidence that they have been paid, if such is the fact. It may be said that this imposes onerous burdens upon the purchaser; but they are not so serious as to justify the disregard of an unambiguous requirement of the statute (section 84). If this was not done, and such taxes remained a lien on the land when the deed was made, the title was not conveyed to Clink, and the right of others who might comply with the law to purchase was not cut off."

To like effect see, *Detroit Fire & Marine Ins. Co.* v. *Wood,* 118 Mich. 31; *Wilkin* v. *Keith,* 121 Mich. 66; *Hall* v. *Mann,* 122 Mich. 13; *Hoffman* v. *Silverthorn,* 137 Mich. 60, 67.

The charter provision promulgates the rule that purchasers of tax titles must pay not only the amount of the tax plus charges but all prior city bids. The certificate, therefore, which set forth that in consideration of the payment of $4,898.91, Faust was entitled to a deed to the premises for a leasehold of 99 years, unless redeemed within the proper

time, was improperly issued. Appellees, however, stated that the subsequent payment of the amount due the city for such prior taxes even though made by the appellant, extinguished the city bid so that, even if there had been merit to plaintiff's claim, the way was now clear for the city to issue a deed on account of the 1929 tax sale, there being no prior city bids in existence. On the contrary, we believe that the subsequent payment of the city bid not by Faust but by the trustee did not give "life and effect" to the bid or the certificate issued in pursuance thereof. *Wilkin* v. *Keith, supra,* p. 76. The failure to observe the charter left the sale subject to attack. Appellees further argue that plaintiff may not upset the sale because the sale was confirmed by the common council and under the following charter provision:

"No sale which shall have been finally confirmed by the council shall thereafter be disallowed except in case the taxes shall have been paid prior to the sale or in case the property is exempt from taxation" (Title 6, Chap. 4, § 14).

This provision does not apply to sales made in contravention of law.

The instant case is not ruled by *Taylor* v. *Auditor General, ante,* 47, which concerned itself only with the question of time of payment and the effect of a failure to pay the amount of a bid within the statutory time. Our question is not one of time of payment, but of the sufficiency of a bid. Under a statute somewhat analogous to the instant charter provision, our courts have held that failure of the purchaser to pay for all the taxes which the statute provided for was a fatal defect in the sale. See *Hughes* v. *Jordan, supra.* However, one who seeks the aid

of an equity court must be prepared to do equity and as a condition precedent to relief the trustee must tender the amount Faust paid plus interest. *Wilkin* v. *Keith, supra; Legg* v. *Bower,* 212 Mich. 403; *Aztec Copper Co.* v. *Auditor General,* 128 Mich. 615; *Connecticut Mutual Life Ins. Co.* v. *Wood,* 115 Mich. 444, 453; *Jenkinson* v. *Auditor General,* 104 Mich. 34, 37; *McGinley* v. *Calumet & Hecla Mining Co.,* 121 Mich. 88; *Sinclair* v. *Learned,* 51 Mich. 335; *Morgan* v. *Tweddle,* 119 Mich. 350; *Closser* v. *Hanson Land Co.,* 209 Mich. 517. Where a tax is valid and constitutes an enforceable lien against the premises, but a serious defect occurs in the tax sale, it may be attacked by the owner of the premises, provided he acts promptly and does equity, which, in this case, means the payment to Lieberwitz of the amount paid by Faust. This is only fair as the property has been relieved of that lien by Faust's payment. Appellant is given three months in which to pay defendant Lieberwitz this amount plus interest at the rate of five per cent. per annum from the time of Faust's bid to the date of reimbursement. Should appellant fail to make such payment within such time, Lieberwitz will then become entitled to a deed of the premises. Appellant will recover costs.

North, C. J., and Fead, Wiest, Bushnell, Edward. M. Sharpe, Potter, and Toy, JJ., concurred.