IN THE MATTER OF THE PETITION OF WASHINGTON G. WILEY.

[See 86 Mich. 381.]

*Taxes—Sale—Publication    of    notice—Jurisdiction—Service    of    subpœna.*

1. The publication of the Auditor General's petition and notice under the tax law of 1889 gave the circuit court in chancery jurisdiction to enter a decree for the sale of land owned by a. resident of the State, but not of the county in which the land was situated, at the time of filing said petition, he having

purchased the land after its return to the Auditor General for delinquent taxes, and placed his deed on record before the petition was filed.

2. The term, "delinquent tax-payer who is a resident of this State," as used in section 53 of the tax law of 1889, and upon whom provision is made for the service of a subpœna upon the filing of the Auditor General's petition, was intended to apply to persons against whom the tax was assessed, and whose names appear upon the assessment roll.

Appeal from Tuscola. (Beach, J.) Submitted on briefs November 11, 1891. Decided December 21, 1891.

Petition to set aside a decree made under the tax law of 1889. Petitioner appeals. Order dismissing petition affirmed. The facts are stated in the opinion.

*F. S. Wheat* (*E. F. Bacon*, of counsel), for petitioner.

*T. C. Quinn*, Prosecuting Attorney, for the people.

LONG, J. The petitioner is the owner of 40 acres of land in Elmwood township, Tuscola county, of the assessed valuation of $200, and against which a tax was assessed for a township drain in the year 1887. The other taxes were paid, and the land was returned delinquent as to this drain tax.

The petitioner was not the owner of the land at the time the tax was assessed, and did not become so until after it was returned to the Auditor General for this delinquent drain tax. Russell A. Clark was the owner of the land at the time the tax was assessed, and thereafter deeded the same to one Corey, who deeded to Wiley, the petitioner, who placed his deed on record prior to the time of filing the petition by the Auditor General, upon which the decree was made, and which is now sought to be set aside.

The Auditor General filed his petition in the circuit court in chancery for Tuscola county in the form required.

by the tax law of 1889. Upon the filing of this petition
a subpœna was issued by the register of that court,
directed to be served on Russell A. Clark. No protest
was filed against the alleged lien by any person. Upon
the fil·ng of the petition, the Auditor General caused a
copy thereof to be published, as required by section 54
of the tax law of 1889. At the February term, 1890, a
default decree was entered against the land for the full
amount claimed. As returned, the amount of the tax
was $81.45. To this was added interest, $21.18; expenses
of sale and collection fees, $4 26; expense of personal
service of subpœna, $.45; and fees to the county clerk,
$.82; making in all, $108.16. In May, 1890, the land
was offered at the tax sale. No one bidding· therefor,
the State became the purchaser for the $108.16. At the
time the petition in this case was filed, the State claimed
$121.17.

Mr. Wiley claims to have first heard of this sale in
March, 1891, when he filed his petition in the circuit
court for the county of Tuscola, in chancery, asking to
have the decree set aside, and that he have opportunity
to appear and defend against the tax; and alleging that
the whole tax was void, by reason of certain irregulari-
ties in its assessment. This petition came on to be
heard before that court on May 18, 1891, when the peti-
tion was dismissed.

The only question which we need discuss is whether,
under these circumstances, the circuit court for the
county of Tuscola, in chancery, acquired jurisdiction over
this land to enter a decree ordering its sale by reason of
the publication of the Auditor General's petit'on, though
no personal service of subpœna was made upon Mr. Wiley,
the petitioner, he being a resident of the State. Section
53 of the tax law of 1889 provides that,—

"After the filing of said petition, the county clerk,

acting as a register in chancery, shall issue a subpœna directed to each delinquent tax-payer who is a resident of this State to appear and answer said petition within twenty days after the return day of said subpœna, or, in default thereof, said petition will be taken as confessed by such delinquent tax-payer."

This section further provides that such subpœna shall be personally served upon such delinquent tax-payer, if he can be found within this State, in the same manner as subpœnas in chancery are served. It also provides for the service of the subpœna in any county in the State, and provides for the payment of fees to officers for making such service. The section then provides as follows:

"If any delinquent tax-payer who has been personally served with subpœna shall not appear to defend against the said petition within the time in this section provided, the same shall be taken as confessed by him, and thereupon a decree may be entered against him, unless said confession shall, upon application to the court at a time before said decree is taken, be set aside. Such decree may be taken either in term-time or at chambers."

Section 54 of the act provides for the publication of the Auditor General's petition, and further provides:

"He shall also publish therewith, for a like time, a notice by him signed, stating therein in substance that the State of Michigan has filed such petition in the circuit court for such county, in chancery, referring to such copy; that it claims a decree against each parcel of land therein described for the amounts specified; that such petition will be brought on for a hearing and decree at the next term of such court, to be held at a time and place in such notice specified; that all persons interested in such lands, against whom a decree shall not have been taken, desiring to contest the lien claimed thereon for such taxes, or any part thereof, shall appear in said court, and file with the clerk thereof their objection thereto, on or before said day; and that, in default thereof, a decree will be taken as prayed for in such petition. In such notice he shall also state that on the first Monday of

May next thereafter the lands described in said petition, and for which an order of sale shall be made, will be sold for the taxes, interest, and charges thereon as determined by such decree, at some convenient place in said county, to be named in said notice."

The section then further provides:

"The publication of the notice aforesaid shall be equivalent to a personal service of notice on all persons not personally served, who are interested in the lands specified in such petition, of the filing thereof, of all proceedings thereon, and of the sale of the lands under the decree, and shall give the court jurisdiction to hear such petition, determine all questions arising thereon, and to decree a sale of such lands for the payment of all taxes, interest, and charges thereon.    The circuit court in chancery shall have jurisdiction to hear, try, and determine the matters alleged in such petition, even though the amount involved therein be less than $100."

The tax law of 1889, under which this proceeding is had, nowhere provides any compensation for the examination of the records in the office of the register of deeds to determine in whom the title of record of the lands returned delinquent for taxes stands, and against whom subpœnas upon the filing of the petition shall issue. It does not provide any compensation to any person for making such searches.    It simply provides that the register shall issue a subpœna directed to each delinquent tax-payer who is a resident of this State.    The Legislature evidently intended that the subpœna should issue and be served upon the person against whom the tax was assessed, and whose name appeared upon the tax-roll for that year.    It evidently was not the intention of the Legislature to make the jurisdiction of the court depend upon the service of the subpœna in that class of cases where the lands were not occupied and were assessed as non-resident, as there would be no means by which the register of the court could determine the real owner of the premises by any search which he might make in the

office of the register of deeds, as it frequently happens that deeds are not recorded for months, and sometimes for years, after their execution and delivery. The use of the words, " delinquent tax-payer who is a resident of this State," undoubtedly was intended to apply to persons against whom the tax was assessed, whose names appear upon the assessment roll.

This section (54) gives the court jurisdiction to enter a decree against such persons, and makes the publication of the notice equivalent to personal service.

The petitioner in this case was not a resident of Tuscola county at the time the Auditor General filed his petition, but claims to have been the owner of the land at that time; but he knew that his land was subject to taxation, and from the brief presented by his counsel it is apparent that he made some inquiry in regard to the taxes, as the State, county, and other taxes were paid, aside from this drain tax. This not being paid, he had the right, upon the filing of the petition of the Auditor General, to appear and show, if he could, such irregularities in the assessment of the drain tax as would authorize the court to set it aside. He must be presumed to have known the provisions of the tax law, and that application would be made to the court under it for a decree to sell the land for any delinquent tax of that year which might appear against it. The publication of the petition and notice by the Auditor General was a sufficient notification to him of the facts therein stated. Upon his failure to appear he was properly defaulted, and the decree properly made for the sale of the land. The court below was not in error in dismissing the petition. That order will be affirmed, with costs.

The other Justices concurred.