S. W. FOWLER v. CORNELIA R. CAMPBELL ET AL.

*Taxes—Sale—Subpœna—Notice—Manner of assessment.*

1. Section 54 of the tax law of 1889, which provides that the publication of a copy of the tax petition, with notice of hearing and decree, shall be equivalent to a personal service of notice on all persons not personally served who are interested in the lands specified in the petition, of the filing thereof, of all proceedings thereon, and of the sale of the lands under the decree, and shall give the court jurisdiction to hear such petition, determine all questions arising thereon, and to decree a sale of such lands for the payment of all taxes, interest, and charges thereon, relates to persons not personally served in accordance with section 53 of the act, which provides for the service of subpœna upon each delinquent tax-payer who is a resident of the State, if found therein, and that, when personal service is had, further proceedings shall be taken, as far as consistent with the provisions of the act, in the same manner as in circuit courts in chancery, and, if such service cannot be made, the return of the officer shall so state, together with the reason therefor.[1]

[1] For cases involving questions arising in proceedings under the tax law of 1889 for the sale of delinquent tax lands, see *Millard v. Truax*, 99 Mich. 157, and note; and see section 66 of the tax

2. Under this statute, it becomes important that supervisors shall observe the statutory provisions requiring real property to be assessed to the owner, if known, and, if not known, then to the occupant, if any, and, if there be no occupant, then as unknown, and making it the duty of each supervisor, as soon as practicable after entering upon the duties of his office, to ascertain the taxable property of his township, and the persons to whom it should be assessed, and their residences.[1]

3. A supervisor who assesses land to the estate of a deceased person, after administration and the discharge of the executors, instead of to the devisees, whose names are easily ascertainable by a reference to the records of the probate court, and who are the owners of the land, not only neglects a plain duty, but fails to assess the property in the way contemplated by the statute.[2]

4. The failure of a supervisor to enter resident and non-resident lands upon separate parts of his assessment roll, or to extend the taxes levied in his township upon the corrected assessment roll received from the board of supervisors after equalization, as required by the tax law of 1869, is fatal to the validity of such taxes, and of tax deeds issued on sales for the non-payment thereof; citing *Seymour v. Peters*, 67 Mich. 415.

5. How. Stat. § 1165, being section 163 of the tax law of 1869, which provides that no sale of real estate for taxes shall be held invalid unless it shall be made to appear that all legal taxes assessed upon such real estate, together with all legal costs and charges thereon, were tendered to the officer authorized to receive such redemption money within the time limited by law for the redemption thereof, requires the tender of such taxes only as were *legally* assessed.

Appeal from Manistee. (Judkins, J.) Argued February 2, 1894. Decided May 22, 1894.

---

law of 1893, which provides for the publication of a copy of the tax petition, and of the order of the circuit judge fixing the time for hearing and decree thereunder, and that such publication shall be equivalent to a personal service of notice on all persons who are interested in the lands specified in such petition, of the filing thereof, of all proceedings thereon, and of the sale of the lands under the decree, and shall give the court jurisdiction to hear such petition, determine all questions arising thereon, and to decree a sale of such lands for the payment of all taxes, interest, and charges thereon.

[1] See Act No. 195, Laws of 1889, §§ 6, 12.

[2] See Act No. 195, Laws of 1889, §§ 6, 7, 12.

Bill to quiet title claimed under tax deeds. Defendants appeal. Decree reversed, and bill dismissed. The facts are stated in the opinion.

*Smurthwaite & Fowler,* for complainant.

*F. E. Wilhey,* for defendants.

McGRATH, C. J. Complainant, claiming title under deeds from the State, issued upon sales for delinquent taxes for the years 1879 to 1887, both inclusive, files this bill to quiet title. The trial court held the deeds for the years 1879 to 1886, inclusive, to be void, and sustained the deed for 1887. Defendants appeal.

The lands had been owned by R. M. Risdon, who died in 1871. Defendants derive their title from Risdon's will. The sale for the taxes of 1887 was made under the law of 1889. At the time of the filing of the petition by the Auditor General, three of the defendants were residents of the State of Michigan, although they did not reside in the county of Manistee, where the lands were located and the proceedings had. The lands were assessed to the "estate of R. M. Risdon." No personal service was had upon any of the resident devisees. A subpoena was issued, directed to the administrator of the estate of R. M. Risdon, returnable February 6, 1890. The sheriff made return that he had, on January 29, 1890, served the subpoena "on the within-named estate of R. M. Risdon, by delivering to William Vincent, agent, a true and compared copy," etc. The decree was, however, entered January 22, 1890. The will of R. M. Risdon was probated in Manistee county. Executors were appointed, the estate administered upon, and the executors discharged in 1876.

It is insisted by complainant that, inasmuch as the statute (section 54) provides that the publication of the notice shall be equivalent to personal service of notice on

all persons not personally served, personal service was unnecessary. But this section of the statute must be read in connection with section 53, which provides specifically that the subpoena shall be personally served upon such delinquent tax-payer, if he can be found within the State, in the same manner as subpoenas in chancery are served; that, where the delinquent is a resident of the State, but not of the county, it shall be the duty of the sheriff to transmit the subpoena to the officer living nearest such delinquent; that such officer shall make service, and retransmit the subpoena; that, if service cannot be made, the return of the officer shall so state, giving the reason for such failure; and makes ample provision for the fees for such service. The language of section 54, referred to, relates to persons not personally served in accordance with the provisions of section 53, relating to personal service. It clearly was not the intention that the mandatory provisions of section 53 might be entirely ignored. Personal service upon the resident heirs was essential to confer jurisdiction.

Under this statute, it becomes important that supervisors shall observe the statutory provisions in making assessments. This statute provides that real property shall be assessed to the owner, if known; if not known, then to the occupant, if any; and, if there be no occupant, then as unknown. An executor, administrator, guardian, or trustee having control of real property may be treated as its owner for the purpose of assessment. Real property which belongs to a person deceased, not being in the control of an executor or administrator, may be assessed to his heirs or devisees jointly, without naming them, until they shall have given notice of their respective names to the supervisor, and of the division of the estate. The statute also makes it the duty of each supervisor, as soon as practicable after entering upon the duties of his office, to ascer-

tain the taxable property of his township, and the persons to whom it should be assessed, and their residences. The supervisor, in the present case, not only neglected a plain duty,—for the names of the owners could have been easily ascertained by referring to the records of the probate court,—but he failed to assess the property in the way contemplated by the statute. In *Re Wiley*, 89 Mich. 58, the petitioner was not the owner of the property at the time of the assessment, and it was there held that the term " delinquent tax-payer " was intended to apply to persons against whom the tax was assessed, and whose names appeared upon the assessment roll.

It is insisted that the tax deeds for the years 1879 and 1880 were *prima facie* evidence of title, and, before any evidence was admissible tending to show their invalidity, the defendants should have shown that the legal taxes were tendered to the proper officer within the time limited for redemption, under section 163 of the tax law of 1869, under which such sales were made. These deeds were held to be invalid for two reasons: (1) Because the tax was not extended upon the assessment roll; and (2) because no distinction was made upon the roll between resident and non-resident lands. It was held in *Seymour v. Peters*, 67 Mich. 415, that these defects were fatal to the validity of the tax and of the tax deed. The defects in the present case go to the entire tax, and the section referred to requires the tender of such taxes only as were legally assessed.

The decree must therefore be reversed, and complainant's bill dismissed, with costs of both courts.

LONG, MONTGOMERY, and HOOKER, JJ., concurred with McGRATH, C. J.

GRANT, J. A careful examination of the tax law of

1889 compels me to concur in the opinion of my brother the Chief Justice. The provision of section 54 that "the publication of the notice aforesaid shall be equivalent to a personal service of notice on all persons not personally served who are interested in the lands specified in such petition, of the filing thereof, of all proceedings thereon, and of the sale of the lands under the decree, and shall give the court jurisdiction to hear such petition, determine all questions arising thereon, and to decree a sale of such lands for the payment of all taxes, interest, and charges thereon," must be construed in connection with the preceding section, requiring the service of a subpoena upon residents of the State. The former decisions of this Court, wherein it has been held that the publication was the equivalent of personal service, involved the rights of nonresidents. I think the Legislature intended by this section to make it mandatory upon the officers to secure a personal service whenever it is practicable to do so. A return of the officer that he is unable to find the person or persons named in the subpoena would authorize the publication, and confer jurisdiction; but it cannot be held that the officers might ignore its provisions, and rely upon the publication to confer jurisdiction upon the court.

By section 55 it is made the duty of the prosecuting attorney of each county to prosecute the proceedings on behalf of the State, and, if he shall refuse, neglect, or be unable to do so, the court is required to appoint some competent person to perform that duty. In the present case no attempt whatever appears to have been made by any officer to enforce any of the provisions of the statute. The land was not assessed either to the owners or to the occupant, nor was there any attempt made to cause the names of the owners or of the occupant to be inserted in the subpoena, nor of the sheriff to ascertain who the owners or occupant were, and obtain service upon them.

It was the duty of the prosecuting attorney to see that proper subpoenas were issued, and proper service upon the proper parties made. The statute neither authorizes nor recognizes service of the subpoena upon an agent.

While it is true that a land-owner is chargeable with knowledge that his land will be assessed and taxes imposed upon it, with the duty of payment, and with knowledge of the time and manner of payment and proceedings to enforce collection, still, in a case where nearly all of the provisions of the law are disregarded, as in this case, I am unable to hold that the proceedings are valid.