NOWLEN *v.* HALL.

1. EJECTMENT — EQUITABLE TITLE — VALIDITY OF GOVERNMENT PATENT.

   An equitable claimant to real estate, whose claim is prior to a government patent therefor issued to an adverse claimant, cannot attack the validity of the patent in ejectment, but must seek his remedy in equity.

2. SAME—ADVERSE POSSESSION.

   The failure of a plaintiff in ejectment to show a legal paper title becomes unimportant where he establishes a complete title by adverse possession.

3. TENANCY IN COMMON—ADVERSE POSSESSION—OUSTER.

   Where the owner of land conveys an undivided interest therein, taking back a mortgage for the purchase price, which he assigns to a third person, his subsequent occupancy cannot be said to be adverse to his co-tenant, in the absence of a clear showing of ouster.

4. EJECTMENT—AFTER-ACQUIRED TITLE.

   A plaintiff in ejectment cannot recover on a title acquired subsequent to the date of ouster alleged in his declaration.

5. TAX SALES—PROSPECTIVE STATUTE.

   The tax law of 1885 (Act No. 153) was prospective only in its operation, and a sale thereunder for taxes previously assessed was void.

6. SAME—VALIDITY OF DECREE—DOLLAR MARK.

   A tax deed is void where the decree on which it is based, by reason of the omission of the dollar mark, fails to show that any sum of money was adjudged against the land.

7. SAME—SUBPŒNA.

   A decree of sale in a tax proceeding under the law of 1889 (Act No. 195) was void where no subpœna was issued to the delinquent tax payer, a resident of the State.

8. SAME—CERTIFICATE OF ERROR.

   A tax deed may be impeached in an action of ejectment by a certificate of error issued by the auditor general under 1 Comp. Laws, § 3921.

9. SAME—VESTED RIGHTS—ADVERSE POSSESSION.

   Whether such certificate may be effective in a case where the claimant under the deed has occupied adversely for the five-year period of limitations prescribed by the statute,—*quære*

Error to Berrien; Coolidge, J. Submitted May 7, 1901. Decided September 25, 1901.

Ejectment by Albert R. Nowlen against Charles W. Hall and others. From a judgment for plaintiff, defendant Hall brings error. Modified and affirmed.

*Samuel H. Kelley*, for appellant.

*A. Plummer*, for appellee.

MONTGOMERY, C. J. This action is ejectment. It is complicated by the fact that two separate pieces of property are involved, and as to each numerous titles are to be considered. One description of property, referred to in the case as "acreage property," is described as the W. ⅔ of that part of the N. W. ¼ of the N. E. ¼ of section 24, town 4 S., of range 19 W., which lies south of the territorial road. The other property comprises lots in B. C. Lewis and Others' addition to Benton Harbor, and in block 31 of the original plat of Benton Harbor. The case was tried before the court without a jury, and determined upon a special finding of facts and law, to which reference will be had in proper order.

Considering first the acreage property, the title shown by plaintiff was derived through Belmont C. Lewis. Lewis acquired his title by conveyance from Green and Willard, who held a certificate of purchase. After conveying to Lewis, Green and Willard assigned their certificate to James E. Miller, and the lands were patented to him. It is contended that plaintiff cannot attack this patent in an action of ejectment. The authorities seem to sustain the defendant's contention that a prior equitable claimant should make his attack upon a patent from the government by a proceeding in chancery. See Tied. Real Prop. § 746. In this State the legal title must prevail in ejectment. See *Buell* v. *Irwin*, 24 Mich. 145; *Harrett* v. *Kinney*, 44 Mich. 457 (7 N. W. 63). The court, however, finds that plaintiff, and those under whom he de-

rives title, had maintained 15 years' adverse possession, and this would be sufficient to cut off the Miller title, and vest the plaintiff with the legal title as against the Miller claimants.

The court further finds:

"November 4, 1869, Lewis conveyed an undivided one-half of these lands to one Boughton. Boughton conveyed the same to Hurley and McOmber, August 13, 1883. The title of Hurley and McOmber became vested in the defendant on July 15, 1889. By a chain of deeds the defendant thus apparently became the owner of one undivided one-half of the land.

"On September 25, 1867, Lewis mortgaged the lands to R. D. Parker. Parker foreclosed his mortgage in chancery, and at the foreclosure sale bid off an undivided one-half of the lands. I find this to be the one-half which Lewis had not conveyed away, and that Boughton and Parker then became the owners, each, of an undivided one-half of the lands. January 16, 1882, Parker conveyed to one Cook, and on January 17, 1882, Cook conveyed to the plaintiff. The plaintiff thus became the owner of an undivided one-half, through the Parker deed.

"The plaintiff, however, entered upon the lands in 1887, and occupied the whole, claiming to be the owner of the whole premises. The foundation of this claim is as follows: When Lewis conveyed to Boughton, November 4, 1869, he took back a mortgage for $3,000 from Boughton upon the lands conveyed. This mortgage was assigned to plaintiff by Lewis, October 21, 1870. The mortgage was foreclosed in chancery, and on April 10, 1877, the plaintiff bid in an undivided one-half at such sale.

"I find that Boughton practically abandoned the premises in 1872, and left Lewis in the sole occupancy. Lewis occupied the same until April, 1874, when he died, leaving a widow. By his will Lewis devised these lands to his widow. She occupied these premises till 1887, when the plaintiff went into possession, and he remained in possession till 1889. June 28, 1887, the widow conveyed the lands to the plaintiff. I find that from 1872 there was adverse possession by Lewis as against Boughton till Lewis' death, in April, 1874, followed by adverse possession by the widow till she conveyed to the plaintiff, in 1887, and that this was followed by adverse possession by the plaintiff till

1889.   The adverse possession as against Boughton and his privies and grantees, therefore, lasted more than fifteen years."

The defendant excepts to this finding that title to the Boughton interest was acquired by adverse possession. We cannot discover that this finding is supported by the testimony.   It must have been based upon a misapprehension of legal principles.   We are not able to find anything showing that Boughton abandoned the premises, unless leaving his co-tenant in charge can be deemed an abandonment.   Furthermore, Lewis, having assigned to the plaintiff the mortgage of Boughton, was not in position to assert title by adverse possession against this interest until a right of entry had been acquired by foreclosure; particularly as, in the meantime, he ( Lewis ) was a tenant in common with Boughton, and his possession was presumptively in the interest of his co-tenant.   We discover no evidence in the record of any actual ouster of Boughton.   Furthermore, plaintiff testifies that he took possession under his foreclosure of the Boughton interest, and understood that the remaining Lewis interest, then held by Parker, was entitled to possession of the other undivided one-half.   This possession of plaintiff was claimed to have been taken in 1877.   We find that, while the adverse possession found by the court had the effect to cut off the Miller title, it did not defeat the Boughton title, which subsequently vested in the defendant.   The commissioner's deed on foreclosure of the Boughton mortgage did not cover this land at all.   The title, therefore, derived through Lewis, was vested one-half in plaintiff and one-half in defendant.

Plaintiff offered in evidence a tax deed to one Ida M. Allen, and a conveyance by her to plaintiff, bearing date December 23, 1897.   But the declaration counts on a possession by plaintiff on October 1, 1897, and an ouster by defendants.   It was held in *De Mill* v. *Moffat*, 49 Mich. 125 (13 N. W. 387), that a recovery could not be had in ejectment on a title acquired by plaintiff after the dates

set forth in the declaration as those on which he had possession and defendant entered.

Defendant also offered in evidence tax deeds purporting to be for the taxes assessed on the acreage property in the years 1882, 1887, 1888, and 1889. As to the tax deed for the taxes of 1882, it appeared that the sale was made under the provisions of the tax law of 1885, which was held in *Hall* v. *Perry*, 72 Mich. 202 (40 N. W. 324), to be prospective only in its operation. See, also, *Humphrey* v. *Auditor General*, 70 Mich. 292 (38 N. W. 214). The deed in question, therefore, was void. As to the tax deeds on sales for taxes of the years 1887 and 1888, the record shows that there were no dollar marks or other indications to show that the figures in the decrees set opposite the descriptions indicated money. These decrees were void, under the rule in *Millard* v. *Truax*, 99 Mich. 157 (58 N. W. 70). As to the tax deed for the taxes of 1889, the court proceedings to enforce this tax were taken under the general tax law of 1889, and there was no subpœna issued directed to the party against whom the tax was assessed, and, of course, no return of inability to secure service. The court acquired no jurisdiction to decree the tax, under the case of *Fowler* v. *Campbell*, 100 Mich. 398 (59 N. W. 185). See, also, *Taylor* v. *Deveaux*, 100 Mich. 581 (59 N. W. 250).

This disposes of all the contentions relating to the acreage property, and our conclusion is that as to this property the plaintiff is the owner of an undivided one-half, and defendant of the other one-half.

As to the city property, the defendant makes no claim to any of the lots except through his tax deeds and adverse possession. There is no finding which supports the defendant's claim of adverse possession. Defendant claims title to lot 13 of block 34 of Lewis' addition by virtue of a tax deed for the taxes of 1893, sold for said taxes December 2, 1895, the deed to defendant bearing date June 3, 1897. The plaintiff introduced in evidence a certificate of cancellation of said tax deed, made by the auditor general under

authority of 1 Comp. Laws, § 3921. That authority existed to so cancel the deed under the certificate has been held in numerous cases. See *Kneeland* v. *Wood,* 117 Mich. 174 (75 N. W. 461); *Wood* v. *Bigelow,* 115 Mich. 123 (73 N. W. 129); *Hand* v. *Auditor General,* 112 Mich. 597 (71 N. W. 160); *Northrup* v. *Maneka,* 126 Mich. 550 (85 N. W. 1128).

A different question is presented as to lots 1, 2, and 3, block 31, of the original plat of Benton Harbor. Here, also, a certificate of cancellation was offered in evidence, which is of the same effect as in the case of lot 13, block 34, unless defendant's claim that he entered into possession under these deeds, and had occupied the premises, claiming title, for a period of more than five years before the commencement of this suit, can be sustained. Defendant contends that a title thus acquired by adverse possession cannot be cut off by the cancellation of the tax deed. There is much force in this contention, but, as already stated, there was no finding of adverse possession by defendant. It is true, defendant, by his counsel, presented a request to the court to find that the defendant had been in occupancy of the lots for five years under the tax deeds, and has excepted generally to the refusal of the court to find as requested, and it is stated in the brief of defendant's counsel that defendant testified without contradiction that prior to the commencement of this suit, for a period of more than five years, he had been in possession of these lots, they being inclosed, with other property he owned, by a fence. A careful reading of the testimony of defendant discloses that he gave no such testimony, nor is any testimony pointed out in the record which supports these statements.

Our conclusion is that the judgment should be affirmed as to the city property, and modified as to the acreage property, so-called. The plaintiff is entitled to recover one-half of the latter. The defendant will recover costs in this court, and the plaintiff will be awarded the costs in the court below.

The other Justices concurred.