## TROMBLE v. HOFFMAN.

1. FORECLOSURE OF TAX LIEN — NOTICE BY PUBLICATION — JURISDICTION.

Notice by publication was sufficient to give the court jurisdiction in a proceeding to foreclose a tax lien under the law of 1889, where the land was unoccupied and assessed as unknown, although the owner was in fact a resident of the State. *In re Wiley*, 89 Mich. 58.

2. SAME—ORDER OF PUBLICATION—TIME.

An order made in term, fixing a time for hearing during the same term, in a proceeding to foreclose a tax lien under the law of 1893, does not confer jurisdiction. *Ledyard* v. *Auditor General*, 121 Mich. 56; *Roberts* v. *Loxley*, Id. 63.

3. SAME—APPEARANCE—WAIVER.

An appearance by a defendant waives irregularities in the proceedings to bring him into court.

4. SAME—APPEARANCE BY SOLICITOR.

Where two parcels of land, owned by different persons, are assessed under one description as unknown, an appearance, in the proceeding to foreclose the lien, by a solicitor for the owners of one parcel, does not give the court jurisdiction over the owners of the other parcel, although the solicitor contests the tax upon the whole of the land assessed.

5. JUDICIAL NOTICE—TERMS OF COURT.

The court will take judicial notice of the times of holding its terms of court.

6. VOID DECREE—COLLATERAL ATTACK.

A decree for a tax sale, made at the same term as the order for hearing, is void on its face, and may be attacked in a collateral proceeding.

7. IRREGULARITY IN DECREE—FINDING OF COURT.

The finding of an irregularity in a decree, by the court which made it, should not be reversed upon a question of fact, where the testimony is very conflicting.

8. VOIDABLE TAX DECREE—COLLATERAL ATTACK.

A tax decree in which the amount decreed is computed and written in by some one after the decree is signed and out of

the control of the court is not void on its face, but voidable, and cannot be attacked in a collateral proceeding, nor will it be set aside in a direct one, unless justice demands it.

9. SAME—PETITION TO VACATE—LACHES.

A tax decree voidable by reason of a technical irregularity will not be set aside upon a petition filed more than a year after the petitioner learned of the sale, where it appears that the decree was not excessive, and the petitioner had sufficient notice of the same to have saved the land before the rights of third persons intervened.

Appeal from Bay; Shepard, J. Submitted April 9, 1902. (Docket No. 29.) Decided June 3, 1902.

Petition by Fremont J. Tromble against Charles E. Hoffman and Perry F. Powers, auditor general, to vacate certain decrees for the sale of land delinquent for taxes. From a decree for petitioner, respondent Hoffman appeals. Reversed.

*C. L. Collins,* for petitioner.

*G. W. Davis,* for appellant.

HOOKER, C. J. The petition in this case is filed by one claiming title to the E. ½ of the N. E. ¼ of a section of land in Bay county, to vacate two decrees for taxes, for the years 1890 and 1891, respectively, under which the lands were bid in for the State in 1893, and subsequently sold and conveyed to the defendant Hoffman by the auditor general. A decree was made in substantial accord with the prayer of the petition, and defendant Hoffman has appealed.

The land in question was unoccupied until Hoffman bought it, when he went into possession. It appears that, at the time of the assessment, the north 40 acres belonged to a copartnership composed of Archibald G. Lindsay and Patrick M. Gamble, and that they were residents of this State, though not of Bay county. The south 40 acres belonged to parties residing in New York, named Heath and Rossitier. Both 40-acre parcels were assessed together as

the E. ½ of the N. E. ¼, as "unknown," both years; and, the taxes being unpaid, proceedings to enforce collection were commenced by the auditor general in the usual way. A subpœna was issued upon the filing of the petition for the tax of 1890 to Heath and Rossitier, which was served upon one Fitzhugh, their agent. Notice was also published as prescribed by law. This was under Act No. 195 of the Public Acts of 1889. Upon the filing of the petition for the tax of 1891, an order of hearing was made on October 3, 1893, for the 10th of November following, and this was duly published. This was under Act No. 206 of the Public Acts of 1893. In each case counsel appeared for Heath and Rossitier, and made a successful contest against portions of the taxes levied on the E. ½ of the N. E. ¼, and a special decree was rendered in each case setting aside, as invalid, a portion of the tax, and determining the amount of the valid tax, and these were entered in the margin. Afterwards the general decrees were made upon the petitions, and these referred to and by reference included the special decrees. The lands were sold in 1893 upon both decrees, and came to the possession of Hoffman through the purchase from the State by deed dated November 20, 1895.

The petitioner, Tromble, claims to have acquired title to both parcels. As to the north 40, he received a deed from Lindsay, as survivor of Lindsay & Gamble, dated May 24, 1897, recorded July 14, 1897. This deed states that "the lands above described are part of the estate of the late firm of Lindsay & Gamble, and said Lindsay is required to make this sale to obtain funds from which to meet the obligations of said copartnership." It is claimed, on behalf of the petitioner, that Heath and Rossitier had a title to the south 40, but defendant insists that an undivided one-eighth interest was lacking. In January, 1900, they deeded to petitioner whatever title they had.

The petitioner had early notice of Hoffman's claim, for he saw him at work upon the premises, and ordered him to desist, and sent him a letter warning him not to tres-

pass upon any of the lands of Heath and Rossitier, in January, 1896, signed by himself as their agent. In June, 1898, petitioner brought ejectment against Hoffman in the circuit court for the county of Bay, in which he joined with himself, as parties plaintiff, both Heath and Rossitier, and alleged in the declaration that the plaintiffs had owned the land in question in fee simple for upwards of five years prior to June 18, 1898. Before the disposition of this case, and on January 17, 1900, he filed a bill against Hoffman, and sought an injunction to restrain him from cutting or selling timber from the premises. An answer in the nature of a cross-bill was filed, setting up defendant's title, and this resulted in an amendment of the bill, in which a number of defects were alleged against defendant's title. This was after an order *pro confesso* for want of an answer to the cross-bill had been set aside.

While the motion to set aside the order *pro confesso* was pending, petitioner filed two petitions for leave to file bills of review in the tax proceedings referred to, in which he alleged upon oath that he became the owner of the original title to the north 40 on May 24, 1897, and of the south 40 on June 15, 1900. Upon the hearing of these petitions, they were dismissed. Soon afterwards the petition in this proceeding was filed, and notice that the same would be brought on for hearing on January 14, 1901, was served, with a copy of the petition, upon defendant Hoffman, and presumably upon the auditor general. Hoffman answered, and, before the matter was heard, petitioner filed an application with the auditor general asking that the defendant's tax title be canceled. This was afterwards denied. Proofs were taken in the chancery case, and at the hearing of said cause it was determined to submit the proceedings upon the petition at the same time; the proofs in the chancery case being used in connection therewith by stipulation.

Did the court get jurisdiction to adjudicate and foreclose the tax lien on the north 40 for the tax of 1890? The entire 80 was assessed as "unknown." When the

petition was filed, a subpœna was issued, directed to Archibald G. Lindsay and Patrick M. Gamble, describing other lands, but not this parcel. It was served on one Henry Gamble. The usual notice was published. Now comes an alleged owner, who attacks this tax title on the ground that, Lindsay & Gamble, his grantors, being residents of the State, a subpœna describing these lands should have issued, and been served upon them. The effect of this claim would be to compel the prosecuting attorney to determine at his peril whether the owner of each tract of land is a resident of this State or not, and, if he is, obtain service of process upon him. Failing to do so as to a parcel would be fatal to the jurisdiction. This land was assessed as unknown, and we must assume that it was unoccupied, as the proofs show it to have been. We must also presume that the owner was not known by the supervisor, and that the assessment was regular.

It is urged that, under the law of 1889, a failure to serve a subpœna upon the delinquent taxpayer or the actual owner was fatal to the jurisdiction of the court as to the land owned by such persons, and that notice by publication would not cure the defect. We are cited to the following cases in support of this: *Taylor* v. *Deveaux*, 100 Mich. 581 (59 N. W. 250); *Fowler* v. *Campbell*, 100 Mich. 398 (59 N. W. 185); *Coyle* v. *O'Connor*, 121 Mich. 596 (80 N. W. 571). An examination of those cases will show that in no one of them was the land assessed as unknown or nonresident, but inferably, at least, it was assessed to residents. *In re Wiley*, 89 Mich. 58 (50 N. W. 742), is a case which has some bearing upon this question. The land in that case was assessed to the apparently resident owner, and subpœna was issued against and served upon him; but before its issue he had sold the land, and the petitioner had become the owner. He attacked the jurisdiction upon the ground that subpœna should have issued against and been served upon him. The court held otherwise, saying that the "delinquent taxpayer who is a resident of this State" meant persons

against whom the tax was assessed, whose names appeared upon the assessment roll. The following quotation is pertinent in this connection:

"The tax law of 1889, under which this proceeding is had, nowhere provides any compensation for the examination of the records in the office of the register of deeds to determine in whom the title of record of the lands returned delinquent for taxes stands, and against whom subpœnas upon the filing of the petition shall issue. It does not provide any compensation to any person for making such searches. It simply provides that the register shall issue a subpœna directed to each delinquent taxpayer who is a resident of this State. The legislature evidently intended that the subpœna should issue and be served upon the person against whom the tax was assessed, and whose name appeared upon the tax roll for that year. It evidently was not the intention of the legislature to make the jurisdiction of the court depend upon the service of the subpœna in that class of cases where the lands were not occupied and were assessed as nonresident, as there would be no means by which the register of the court could determine the real owner of the premises by any search which he might make in the office of the register of deeds, as it frequently happens that deeds are not recorded for months, and sometimes for years, after their execution and delivery. The use of the words 'delinquent taxpayer who is a resident of this State' undoubtedly was intended to apply to persons against whom the tax was assessed, whose names appear upon the assessment roll. This section (54) gives the court jurisdiction to enter a decree against such persons, and makes the publication of the notice equivalent to personal service."

Upon the face of the record, the land was assessed to unknown parties, if not nonresidents. In such a case jurisdiction was obtained by publication, under the interpretation of the statute quoted, and the three cases cited have no application. See, also, *Nowlen* v. *Hall*, 128 Mich. 274 (87 N. W. 222), for a similar case. This is conclusive of the jurisdictional question in the proceedings to enforce the tax of 1890 upon the north 40.

What has been said of the tax of 1890 is true of that of 1891, in part. The record shows that Heath and Rossitier

were represented by attorney, and made objections to the taxes upon the E. ½ of the N. E. ¼, but nothing indicates that Lindsay or Gamble appeared. We understand that the validity of the proceedings for the foreclosure of the tax of 1891 is not attacked upon the same ground. These proceedings were commenced under the tax law of 1893, which does not contain the requirement of personal service of a subpœna, but provides for publication of an order as notice of the pendency of the proceeding. This was done. The defect complained of in this proceeding is that the decree was entered at the same term at which the order was made. Section 62 of the tax law of 1893 prescribes the form of the order, which requires all persons interested to file their objections on or before the first day of the term at which the notice fixes the hearing of the petition. We have held in two cases that an order made in term, fixing a time for hearing during the same term, does not confer jurisdiction. *Ledyard* v. *Auditor General*, 121 Mich. 56 (79 N. W. 918); *Roberts* v. *Loxley*, 121 Mich. 63 (79 N. W. 978).

This would be conclusive as to this title, were it not for other questions raised by the defendant; *e. g.*, he claims that the appearance of counsel who contested the tax upon this 80-acre parcel, which included the 40 under discussion, conferred jurisdiction upon the court, and renders immaterial questions relating to process. It is undeniable that, if it can be said that Lindsay & Gamble appeared and contested these taxes, defendant is correct, and jurisdiction was acquired, whether process was regular or not.

It is claimed on behalf of the defendant that it must be assumed that the appearance of Mr. McHugh was for Lindsay & Gamble. Manifestly, if it was not, there was no waiver of jurisdiction, unless we are to say that any volunteer may waive process for another, which cannot be true. Had Mr. McHugh professed to appear for Lindsay & Gamble, who should then be called upon to decide whether the party, on discovery of that fact, might not move in the same proceeding to vacate the decree; but a

reference to the objections filed shows whom this attorney appeared for, and the names of Lindsay & Gamble are not among them. The names of Heath and Rossitier are; and appended to the objections is a list of lands in which he appears for Heath and Rossitier, and this 80-acre lot is included. So, on the face of the record, Lindsay & Gamble did not appear, and therefore cannot be said to have waived the defects in process through the appearance of counsel.

Counsel for the defendant seeks to break the force of this objection by the claim that, inasmuch as Lindsay & Gamble did not ask the board of review to have this assessment corrected, neither they nor their grantees can now complain of it. We may safely treat this as so, for the purpose of the case, and say that the tax may not be held invalid by reason of the error in assessment. It is not the erroneous assessment, but the failure to bring in the owner, who was entitled to service of process, though he might not complain of the manner in which his land was listed. The appearance for Heath and Rossitier was ineffective to waive this jurisdictional question for Lindsay or Gamble.

From the foregoing it will be seen that the decree under which the defendant claims title on the sale for the tax of 1891 was void as to the north 40 for want of jurisdiction, and that the same appears on the face of the record, as the court will take judicial notice of the times of holding its terms. *Ledyard* v. *Auditor General*, 121 Mich. 56 (79 N. W. 918); *Roberts* v. *Loxley*, 121 Mich. 63 (79 N. W. 978). It is therefore subject to attack in collateral proceedings. The same cannot be said of the south 40. In each case Heath and Rossitier saw fit to appear and contest the tax, which gave the court jurisdiction, although the process may have been defective or not served, and notwithstanding the hearing at the same term that the order was made.

Counsel for the petitioner attacks the decree upon another ground, viz., that the amount decreed was in each

case written in after the decree was signed, by some officer of the county treasurer's office, and based upon computations made after the decree was signed. The testimony is conflicting on this point, but the testimony of the judge and his clerk indicates that the contested taxes were determined and announced and entered on the margin by the judge, or at his direction, and that, before the final decree was signed, all amounts had been entered by some one. Other witnesses thought that the entries were made in the treasurer's office, and after final decree was made and signed. The learned circuit judge who heard the testimony found that the amounts were entered after the decree was made, and we think that the finding of an irregularity in a decree by the tribunal which made it should not be reversed upon a question of fact in a case where the testimony is so conflicting as in this.

The statute forbids the setting aside a sale after the lapse of one year from confirmation. In *Benedict* v. *Auditor General*, 104 Mich. 269 (62 N. W. 364), we held that, where the proceedings were absolutely void for want of jurisdiction, section 70 of the tax law did not preclude a review of the question on petition to vacate the decree. In the case of *Berkey* v. *Burchard*, 119 Mich. 101 (77 N. W. 635, 79 N. W. 908), it was held that, under section 70 of the tax law of 1893, "leave to file a bill of review should not be granted in a tax proceeding after confirmation of the sale, *unless a total want of jurisdiction to make the decree* is shown, or one of the two causes mentioned in the statute exists." In the case of *Spaulding* v. *O'Connor*, decided at the same term, and reported in 119 Mich. 45 (77 N. W. 323), it was clearly indicated that "a sale will not be set aside after confirmation, either on *petition or bill of review*, except for one of the reasons specified, or ( under *Benedict* v. *Auditor General* ) for defects going to the jurisdiction." See, also, *Wilkin* v. *Keith*, 121 Mich. 74 (79 N. W. 887).

It is said that the decision in the case of *Morgan* v. *Tweddle*, 119 Mich. 350 (78 N. W. 121), followed by

*First Baptist Church* v. *Roberts,* 120 Mich. 704 (79 N. W. 910), excepts from the effect of section 70 cases where an attempt is made to show that the decree was irregularly made. We find it unnecessary to pass upon this question. It is undoubtedly within the power of a court of chancery to review its own action, in a direct proceeding, after the lapse of more than a year, in all ordinary cases; and this case is no exception, unless the tax law has made it so. In putting this provision into the law (Act No. 206, Pub. Acts 1893, § 70), the legislature has attempted to curtail the power of review in this class of cases. As we pointed out in *Spaulding* v. *O'Connor,* a technical construction would not have permitted us to set aside sales by this method even where there was an absence of jurisdiction, and would require us to treat it as an absolute bar as to irregularities, except in the two cases mentioned in the statute, leaving parties to seek other relief.

But if these cases are overruled by the later cases cited, it does not follow that the decree should be vacated. The decree is not void upon its face, and, while it may be attacked in a direct proceeding, it must have all of the verity of a decree until it is attacked. See *Wilkin* v. *Keith,* 121 Mich. 73, 74 (79 N. W. 887). An analogous question was discussed in *Peninsular Sav. Bank* v. *Ward,* 118 Mich. 93 (76 N. W. 161, 79 N. W. 911). Being voidable merely, the court cannot question its validity in a collateral proceeding; nor is it bound to set it aside in a direct one, unless justice demands it. In the case of *Cook* v. *Hall,* 123 Mich. 378 (82 N. W. 59), it was sought to set aside decrees for defects in their nature jurisdictional, some of which must have appeared from records of the court, if not in the case, and therefore subject to collateral attack. But relief was denied upon the ground of laches, two years having elapsed after the petitioner learned of the sale. Mr. Justice GRANT alluded to petitioner's disregard of the known fact that his lands were assessed and taxed, and that, if payment of the taxes was not made, they would be, and were, under the law, sold.

He allowed others to acquire interests in the same in reliance upon this sale, and no equity was shown justifying the vacating of the sale. This case was followed by *Cook* v. *Auditor General*, 124 Mich. 430 (83 N. W. 96), where the court exercised its discretion by refusing to compel a cancellation of the deed by the auditor general.

In *Spaulding* v. *O'Connor, supra*, the rule was recognized in the following language:

"The practice of setting aside sales upon foreclosure is not a statutory one, but is done in the exercise of a power essentially equitable, inherent in the court of chancery. Its exercise is not limited to cases where there is irregularity, but, where the sale is not void, special circumstances appealing to equitable considerations must exist * * * Not only must there be equitable considerations to move the court, but there must also be an absence of laches."

In the present case the persons who owned these lands knew that they would be taxed, and sold if the taxes were not paid. The owners of the south 40 appeared and contested the tax, by counsel, and presumably knew of the decree. Yet they took no steps to save the land or vacate the decree. The owners of the north 40 paid no attention to it, and, if the deed correctly states the consideration, sold it to the petitioner for $1. What was the petitioner's relation to these lands? He claims to have had some kind of an arrangement with the owners in regard to these lands before the State bought them. It was his duty to pay the taxes, in certain contingencies. He knew that they were taxed, knew that they were returned in time to redeem them, knew that they were purchased by the State, and corresponded with the auditor general about them. Subsequently he knew that Hoffman claimed them, and wrote to him and saw him in relation to them. He then bought the original title himself, and laid claim to them, and finally took legal proceedings, but not in the first instance to set aside this decree. He began ejectment, claiming the tax title to be void. He filed a bill upon the same theory. Later, he filed a bill of review to set aside

the decree, and after this was dismissed he applied to the auditor general for cancellation.    All of these proceedings sought to avoid the payment of the small tax which was levied upon these lands.    Finally, as a last resort, he has filed this petition.    He relies upon a technical point, rather than a meritorious one.    It is not claimed that this decree is larger than was announced, or that it was for more than a just tax, or for a tax that the landowners ought not to have paid; but one in privity with those parties now appears and asks a court of equity to set aside its own just decree, upon an irregularity that has not affected or changed the decision made, notwithstanding the fact that rights have been acquired and expense incurred in reliance upon it.    If it be granted that the power is not taken away by the statute, the fact remains that, as equity may always refuse in such cases to grant relief where laches are shown, so it may refuse relief, and validate the decree, notwithstanding the irregularity, where equity and justice demand it.    It is not to be inferred that a void decree would be made valid, but this relief may be refused.

The decree is reversed, and petition dismissed, with costs.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.